## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

GEORGE R. JARKESY, JR.,

    Plaintiff,

  v.             No.: 3:22-cv-00405

SECURITIES AND EXCHANGE
COMMISSION,

    Defendant.

## <u>U.S. SECURITIES AND EXCHANGE COMMISSION'S</u>
## <u>MOTION FOR SUMMARY JUDGMENT</u>

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................ 1

II.    BACKGROUND ................................................................................. 1

III.   NATURE AND STAGE OF PROCEEDING ...................................... 3

IV.   SUMMARY OF ARGUMENT ........................................................... 8

V.    ARGUMENT ...................................................................................... 9

     A.    Summary judgment is appropriate because no material facts are in dispute. ................................................................... 10

     B.    The SEC correctly determined that FOIA Request Subpart 1 is an improper FOIA request. ............................................. 11

     C.    The SEC appropriately responded to FOIA Request Subpart 3 ................. 12

     D.    The SEC performed adequate searches for records responsive to FOIA Request Subparts 6, 11, 12(b), and 12(c). .................................................... 14

     E.    The SEC properly withheld information under FOIA Exemptions 4, 5, 6, and 7(E) in responding to Subparts 2, 4, 5, 7, 8, 9, and 12(a). .................... 17

           1.    Agencies can withhold exempt information when responding to FOIA requests. ................................................................... 17

           2.    The SEC appropriately withheld information under Exemption 4. . 19

           3.    Exemption 5 allows agencies to withhold documents protected by the attorney work-product doctrine, the attorney-client privilege, and the deliberative process privilege. ................................................... 22

           4.    The SEC properly determined that communications with BRG, General Dynamics, Integrated Systems Inc., and Maximus + Attain contractors were intra-agency communications. ............................ 23

           5.    The SEC properly withheld information under the attorney work-product doctrine. .............................................................. 24

           6.    The SEC properly withheld information under the deliberative process privilege. .................................................................. 29

7.      The SEC properly withheld information under the attorney-client privilege. .......................................................................... 36

8.      The SEC properly withheld information under Exemption 6. ......... 38

9.      The SEC appropriately withheld information under Exemption 7(E). ............................................................................................ 43

VI.   CONCLUSION ....................................................................................... 44

## TABLE OF AUTHORITIES

**CASES**

*ACLU v. CIA*, No. 1:18-cv-2784 (CJN), 2022 WL 306360 (D.D.C. Feb. 2, 2022) .......... 34

*ACLU v. Dep't of Defense*, 628 F.3d 612 (D.C. Cir. 2011) ........................................ 18, 19

*Am. First Legal Found. v. U.S. Dep't of Agric.*, No. 22-3029 (BAH), 2023 WL 4581313

(D.D.C. July 18, 2023) .................................................................................... 38

*Amiri v. NSF,* No. 1:20-cv-02006 (TNM),

2021 WL 4438910 (D.D.C. Sept. 28, 2021) .......................................................... 19, 42

*Appleton v. FDA*, 451 F. Supp. 2d 129 (D.D.C. Aug. 21, 2006)...................................... 37

*Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 437 F.3d 312 (D.C. Cir. 2006)....... 20

*Ball v. United States Marshals Serv.*, No. 19-1230 (JEB), 2021 WL 4860590 (D.D.C.

Oct. 19, 2021) .............................................................................................. 42

*Berk v. Exec. Office of United States Attys.*, No. 3:18-CV-1349-M-BK, 2021 WL

1877068 (N.D. Tex. Feb. 2, 2021) ..................................................................... 41

*Bradley v. IRS*, No. 5:17-CV-737-DAE, 2019 WL 4980459

(W.D. Tex. Aug. 5, 2019) .............................................................................. 25, 27, 44

*Brewer v. U.S. DOJ*, No. 3:18-CV-1018-B-BH, 2019 WL 3948351

(N.D. Tex. July 30, 2019) ............................................................................... 15

*Cable News Network, Inc. v. FBI*, 271 F. Supp. 3d 108 (D.D.C. 2017)........................... 12

*Calle v. FBI*, No. 3:10-CV-2362-M, 2011 WL 3820577 (N.D. Tex. Aug. 5, 2011) .. 38, 39

*Center for Biological Diversity v. U.S. EPA*, 369 F. Supp. 3d 128 (D.D.C. 2019) .......... 32

*Chavis v. U.S. DOJ*, No. 1:20-cv-00638 (TNM), 2021 WL 1668069 (D.D.C. Apr. 28, 2021) ...................................................................................................................... 19

*Claudio v. SSA*, No. H-98-1911, 2000 WL 33379041 (S.D. Tex. May 23, 2000) ............ 32

*Clemente v. FBI*, No. 1:20-cv-1527 (TNM), 2022 WL 17092585 (D.D.C. Nov. 21, 2022) ...................................................................................... 9, 15

*Codrea v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 21-2201 (RC), 2022 WL 4182189 (D.D.C. Sept. 13, 2022) .......................................................................... 10

*Competitive Enter. Inst*. *v. U.S. EPA*, 232 F. Supp. 3d 172 (D.D.C. 2017) ..................... 29

*Cotton v. Adams*, 798 F. Supp. 22 (D.D.C. 1992) ............................................................ 41

*Davidson v. United States*, 264 F. Supp. 3d 97 (D.D.C. 2017) .................................. 40, 42

*Democracy Forward Found. v. Centers for Medicare & Medicaid Servs.*, No. CV 18-635 (JDB), 2020 WL 1508508 (D.D.C. March 30, 2020) .................................................... 23

*Dep't of Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1 (2001) ........ 22, 23

*Dillon v. U.S. DOJ*, 444 F. Supp. 3d 67 (D.D.C. 2020) .................................................... 10

*Driggers v. United States*, No. 3:11-CV-0229-N, 2011 WL 5525337 (N.D. Tex. Oct. 26, 2011) ................................................................. 44

*Elec. Frontier Found. v. U.S. DOJ*, 739 F.3d 1 (D.C. Cir. 2014) .................................... 29

*Elec. Privacy Info. Ctr. v. FBI*, No. 1:17-cv-00121 (TNM), 2018 WL 2324084 (D.D.C. May 22, 2018) ................................................................................................... 15, 18

*Elec. Privacy Info. Ctr. v. U.S. DOJ*, 320 F. Supp. 3d 110 (D.D.C. 2018) ....................... 33

*Energy Policy Advocates v. U.S. Dep't of State*, No. 1:19-cv-03307 (TNM), 2023 WL 4198200 (D.D.C. June 27, 2023) ................................................................................... 38

*Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356 (2019) .................................... 20

*Gahagan v. USCIS*, No. 15-2540 Section "R" (3), 2017 WL 3393993

    (E.D. La. Aug. 8, 2017) .......................................................................... 36, 37

*Gov't Accountability Project v. U.S. Dep't of State*, 699 F. Supp. 2d 97

    (D.D.C. 2010) ........................................................................................ 22, 39

*Greenspan v. Bd. of Governors of the Fed. Rsrv. Sys.*,

    643 F. Supp. 3d 176 (D.D.C. 2022) ...................................................... passim

*Hall & Assocs. v. U.S. EPA*, No. 16-5315, 2018 WL 1896493

    (D.C. Cir. Apr. 9, 2018) ................................................................................ 14

*Hertzberg v. Veneman*, 273 F. Supp. 2d 67 (D.D.C. 2003) ......................................... 25, 27

*Horvath v. U.S. Secret Serv.*, 419 F. Supp. 3d 40 (D.D.C. 2019) .................................... 40

*Huddleston v. FBI*, No. 4:20-CV-00447, 2022 WL 4593084

    (E.D. Tex. Sept. 29, 2022) ...................................................................... 20, 21

*Hunton & Williams LLP v. U.S. EPA*, 346 F. Supp. 3d 61 (D.D.C. Sept. 27, 2018) ........ 41

*Jarvis v. Comm'r, Soc. Sec. Admin.*, No. 18-5170, 2018 WL 6722401

    (D.C. Cir. Dec. 18, 2018) .............................................................................. 14

*Jobe v. NTSB*, 1 F.4th 396 (5th Cir. 2021) ............................................................... 17, 22

*Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19 (D.D.C. 2000) ....... 11, 12

*Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 736 F. Supp. 2d 202

    (D.D.C. 2010) ............................................................................................... 28

*Judicial Watch, Inc. v. U.S. DOJ*, 432 F.3d 366 (D.C. Cir. 2005) ................................... 28

*Judicial Watch, Inc. v. U.S. DOJ*, 806 F. App'x 5 (D.C. Cir. 2020) ................................ 27

*Leopold v. U.S. DOJ*, 487 F. Supp. 3d 1 (D.D.C. 2020) ...................................................... 27

*Lewis v. U.S. Dep't of Treasury*, No. 17-cv0943 (DLF), 2020 WL 1667656

(D.D.C. Apr. 3, 2020) .................................................................................................. 33

*Longas-Palacio v. U.S. Citizenship & Immigr. Servs.*, No. CV H-21-2661, 2023 WL

2277128 (S.D. Tex. Feb. 28, 2023) ........................................................................ passim

*Machado Amadis v. DOJ*, 388 F. Supp. 3d 1 (D.D.C. 2019) ............................................. 15

*Martin v. EEOC*, No. 85-2266, 1986 WL 31595 (S.D. Tex. March 25, 1986) ................. 32

*McKinley v. Bd. of Governors of the Fed. Reserve Sys.*, 647 F.3d 331

(D.C. Cir. 2011) ..................................................................................................... 23, 25

*Media Research Ctr. v. U.S. DOJ*, 818 F. Supp. 2d 131 (D.D.C. 2011) ........................... 10

*Morgan v. FBI*, No. A-15-CA-1255-SS, 2016 WL 7443397

(W.D. Tex. May 23, 2016) .......................................................................................... 15

*Nat'l Sec. Archive v. CIA*, 752 F.3d 460 (D.C. Cir. 2014) ................................................. 32

*Nova Oculus Partners, LLC v. SEC*, 486 F. Supp. 3d 280 (D.D.C. 2020) ........................ 40

*Nurse v. Sec'y of the Air Force*, 231 F. Supp. 2d 323 (D.D.C. 2002) ............................... 11

*Public Employees for Envtl. Responsibility v. U.S. EPA*, No. 18-cv-2219 (BAH), 2021

WL 2515007 (D.D.C. June 18, 2021) .......................................................................... 34

*Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194

(D.D.C. 2007) ........................................................................................................ passim

*Rutila v. U.S. DOT*, No. 3:16-CV-2911-B, 2022 WL 2359640 ................................. 11, 12

*Seife v. FDA*, 43 F.4th 231 (2d Cir. 2022) ........................................................................ 21

*Skinner v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 12-5319, 2013 WL
3367431 (D.C. Cir. May 31, 2013) ................................................................. 14

*Smith v. Dep't of Labor*, 798 F. Supp. 2d 274 (D.D.C. 2011) .............................. 41

*Soghoian v. OMB*, 932 F. Supp. 2d 167 (D.D.C. 2013) ...................................... 20

*Sokolow v. FDA*, No. 1:97-CV-252, 1998 U.S. Dist. LEXIS 23672
(E.D. Tex. 1998) .................................................................................. 9, 10, 19

*Techserve Alliance v. Napolitano*, 803 F. Supp. 2d 16 (D.D.C. 2011) ............................ 33

*Telematch, Inc. v. U.S. Dep't Agric.*, 45 F.4th 343 (D.C. Cir. 2022) ................................. 39

*U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595 (1982) .................................... 39

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777 (2021) ....................... 23, 29

*Verde v. FAA*, 287 F. Supp. 3d 661 (S.D. Tex. 2018) ....................................... 9

*W & T Offshore, Inc. v. U.S. DOC*, No: 03-2285 SECTION: I/2, 2004 WL 2115418 (E.D.
La. Sept. 21, 2004) ................................................................................ 33, 37

**STATUTES & RULES**

5 U.S.C. § 551(2) ................................................................................................. 19

5 U.S.C. § 552(a)(3)(A) ....................................................................................... 11

5 U.S.C. § 552(a)(8)(A) ....................................................................................... 18

5 U.S.C. § 552(b)(1)-(9) ...................................................................................... 17

5 U.S.C. § 552(b)(4) ........................................................................................... 19

5 U.S.C. § 552(b)(5) ........................................................................................... 22

5 U.S.C. § 552(b)(7)(E) ....................................................................................... 43

Fed. R. Civ. P. 26(b)(3) ....................................................................................... 25

Fed. R. Civ. P. 56(a) ................................................................................... 9

**OTHER AUTHORITIES**

*Commission Statement Relating to Certain Administrative Adjudications*, U.S. Securities

and Exchange Commission (Apr. 5, 2022),

https://www.sec.gov/news/statement/commission-statement-relating-certain-

administrative-adjudications ......................................................................... 1, 2

Letter from the Solicitor General, *SEC v. Cochran*, No. 21-1239 (S. Ct. Apr. 8, 2022),

(*available at* https://www.supremecourt.gov/DocketPDF/21/21-

1239/220641/20220408165202974_Letter%2021-1239%20final.pdf ......................... 26

Notice of Supplemental Authorities, Doc. 00516268389, *Jarkesy v. SEC*, No. 20-61007

(5th Cir. Apr. 5, 2022) ................................................................................ 26

*Second Commission Statement Relating to Certain Administrative Adjudications*, U.S.

Securities and Exchange Commission (June 2, 2023),

https://www.sec.gov/news/statement/second-commission-statement-relating-

certainadministrative-adjudications .......................................................... 2, 26

## I.    **INTRODUCTION**

Defendant U.S. Securities and Exchange Commission ("SEC") hereby moves for summary judgment under Federal Rule of Civil Procedure 56 in this Freedom of Information Act ("FOIA") action.  The SEC requests that this Court grant summary judgment in its favor because no genuine issue of material fact exists, and the SEC is entitled to judgment as a matter of law.  In support of this motion, the SEC respectfully refers the Court to the accompanying statement of material facts and declarations of Elizabeth McFadden, Mark Tallarico, Adrienne Santos, and Kathleen Koppenhoefer with accompanying exhibits.

## II.    **BACKGROUND**

On April 5, 2022, the SEC issued a statement explaining that it had "identified a control deficiency related to the separation of its enforcement and adjudicatory functions within its system for administrative adjudications."  *Commission Statement Relating to Certain Administrative Adjudications*, U.S. Securities and Exchange Commission (Apr. 5, 2022), https://www.sec.gov/news/statement/commission-statement-relating-certain-administrative-adjudications ("April 5 Statement").  The April 5 Statement states that the SEC had "commence[d] a comprehensive internal review to assess the scope and potential impact of the issue" and that it was "releasing the findings of that review as it relates to two adjudicatory matters currently in litigation in federal court."  *Id*.  The statement describes the internal review and says that it is "being conducted by experienced investigative staff from the Division of Examinations under the supervision

1

of the Commission's General Counsel." *Id*.  The statement also describes the role of a

consulting firm in the internal review:

> To support the internal review, the Office of the General Counsel retained the
> Berkeley Research Group, LLC ("BRG"), a consulting firm with staff that
> includes a team of experienced investigators and forensic analysts.  Together, the
> internal team and BRG staff are in the process of performing a comprehensive
> review of the facts surrounding the control deficiency and assessing its potential
> impact on administrative adjudicatory matters. BRG is also conducting an
> independent forensic analysis to determine the scope and potential impact of the
> control deficiency. That analysis includes a detailed review of the Office of the
> Secretary databases in which the Adjudication memoranda were stored and the
> Enforcement databases into which some of those memoranda were uploaded. BRG
> is also conducting an analysis of access logs for the various systems.

*Id*.  The majority of the statement discusses the impact of the control deficiency on two

administrative proceedings that had related matters pending in federal court, *SEC v.

Cochran*, No. 21-1239 (S. Ct.), and *Jarkesy v. SEC*, No. 20-61007 (5th Cir.).  *Id*.  The

statement concludes by stating that "[t]he review team will continue to assess the

remaining affected adjudicatory matters, and we will release those findings as soon as we

are able to do so."  *Id*.

On June 2, 2023, the SEC issued a second statement regarding the control

deficiency related to the separation of the SEC's enforcement and adjudicatory functions.

*See Second Commission Statement Relating to Certain Administrative Adjudications*,

U.S. Securities and Exchange Commission (June 2, 2023),

https://www.sec.gov/news/statement/second-commission-statement-relating-

certainadministrative-adjudications ("Second Statement").  The Second Statement and its

five exhibits provide, among other things, additional information about *Cochran* and

*Jarkesy* and information about twenty-eight additional "Affected Matters" that were

pending before the Commission and sixty-one then-pending matters encompassed by eight "Omnibus Memoranda." *Id*. The Second Statement cites the Orders Instituting Proceedings for each of the twenty-eight "Affected Matters," and Exhibits 2 and 5 to the Second Statement contain links to the electronic dockets for the twenty-eight and sixty-one matters they respectively describe. *Id*.

### III.    NATURE AND STAGE OF PROCEEDING[1]

On September 12, 2022, the SEC's Office of FOIA Services ("FOIA Office") received a FOIA request from S. Michael McColloch, who stated in the request that he is Plaintiff's counsel.  SMF ¶1.  The FOIA request seeks "all documentation and correspondence, including but not limited to, internal memoranda, reports, email correspondence, letters, messages and other forms of communication, regarding the following occurrences":

1. The actions, inactions and circumstances that constitute the "control deficiency."

2. The Commission's discovery of the deficiencies that allowed enforcement personnel to access the administrative adjudications system and documents of the Commission's Administrative Law Judges ("ALJs") and their staff.

3. All instances in which enforcement personnel accessed, or could have accessed, documents stored in the administrative adjudications system, including the names of all cases in which enforcement personnel accessed or could have accessed said system.

---

[1] The SEC's Statement of Material Facts in Support of the SEC's Motion for Summary Judgment is referred to herein as "SMF."  The Declaration of Mark Tallarico is referred to herein as "Tallarico Decl."  The Declaration of Adrienne Santos is referred to herein as "Santos Decl."  The Declaration of Elizabeth McFadden is referred to herein as "McFadden Decl."  The Declaration of Kathleen Koppenhoefer is referred to herein as "Koppenhoefer Decl."

4.  The Commission's determinations regarding the remedial measures that should be taken (or have been taken) to address deficiencies that allowed enforcement personnel to access the administrative adjudications system.

5.  The Commission's determination that "access to the Adjudication memoranda would not have affected any Enforcement filings" in the following cases: a. David S. Hall, P.C. d/b/a The Hall Group CPAs, David S. Hall, CPA, Michelle L. Helterbran Cochran, CPA, and Susan A. Cisneros, Admin. Proc. 3-17228; SEC v. Cochran, No. 21-1239 (S. Ct.); and b. John Thomas Capital Mgmt. Grp. LLC d/b/a Patriot28 LLC, and George R. Jarkesy Jr., Admin. Proc. 3-15255; Jarkesy v. SEC, No. 20-61007 (5th Cir. May 18, 2022).

6.  The Commission's findings regarding the effects of the control deficiency on all other cases in which the Commission identified that enforcement personnel accessed, or could have accessed the administrative adjudications system.

7.  All documents related to and communications with the Commission's Office of the General Counsel, including any referral, investigation, memoranda and reports.

8.  The decision of the Commission and/or its Office of the General Counsel to hire Berkley [sic] Research Group, LLC ("BRG"), a private consulting firm, to support the Commission's internal review of the control deficiency and the contract bid request, if any.

9.  Any reports, memoranda, or communications produced by BRG related to its review of the control deficiency.

10. Copies of all contracts, including bid requests and scope of works, with BRG for the relevant time period.

11. The involvement of the Commission's Office of Inspector General ("OIG") in the Commission's discovery, investigation, and remedy of the control deficiency and the OIG's subsequent findings, if any.

12. The Commission's determination to issue the April 5, 2022 statement, the pending report referenced therein, and any future actions the Commission plans to take regarding control deficiencies between the Adjudicatory and Enforcement Divisions.

*Id.* The SEC's FOIA Office has treated subpart 12 in three parts: (a) the Commission's determination to issue the April 5, 2022 statement; (b) the Commission's determination to issue the pending report referenced therein; and (c) any future actions the Commission plans to take regarding control deficiencies between Adjudications and the Division of Enforcement. *Id.* at ¶2.

On November 23, 2022, Plaintiff filed the complaint in this lawsuit concerning his FOIA request. *See* ECF 1.

On January 20, 2023, the FOIA Office issued an interim partial response to Plaintiff's FOIA request. SMF ¶9. With respect to subpart 1, the FOIA Office stated that the subpart was improper because it did not reasonably describe the records sought as required by 5 U.S.C. § 552(a)(3)(A) and the SEC's implementing rule, 17 CFR § 200.80(d)(3). *Id.* With respect to subpart 3, the FOIA Office stated that responsive records were protected from release by the attorney work-product, deliberative process, and/or attorney-client privileges embodied in FOIA Exemption 5. *Id.* With respect to subpart 10, the FOIA Office released to Plaintiff 33 pages of records, which were redacted in part under FOIA Exemptions 4 and 6, 5 U.S.C. § 552(b)(4) and (6). *Id.* With respect to subparts 6, 11, 12(b), and 12(c), the FOIA Office stated that it did not locate any responsive information. *Id.*

On March 24, 2023, the FOIA Office sent a letter to the FOIA requester informing him that, among other things, the SEC had identified approximately 3,700 records, consisting of approximately 51,700 pages, that may be responsive to the remaining seven sub-parts of the FOIA request (items 2, 4, 5, 7, 8, 9, and 12(a)). SMF ¶10. The letter

also stated that, because the records potentially responsive to this request are voluminous, the FOIA request would need to be processed in the FOIA Office's Complex track. *See id.* The letter asked that, if the FOIA requester was still interested in having the remaining sub-parts of the request processed, he should contact the FOIA Office by May 5, 2023. *Id.*

On May 24, 2023, the FOIA Office sent the FOIA requester a letter stating that, because the FOIA Office had not heard from the FOIA requester, the FOIA Office assumed that the FOIA requester had elected not to pursue the FOIA request, and the FOIA Office administratively closed the FOIA request. SMF ¶11.

In June 2023, the parties filed various motions, specifically the SEC's motion to modify docket-control order, Plaintiff's motion for summary judgment, and the SEC's motion for clarification as to the Court's order granting the SEC's motion to modify docket control-order. *See* ECF 10-13, 15. The Court granted the SEC's motions and extended the deadline for the SEC's response to Plaintiff's motion for summary judgment. *See* ECF 14, 16. The Court also ordered that the parties attend a settlement conference before Magistrate Judge Sam Sheldon. ECF 14.

In August 2023, following discussions with Magistrate Judge Sheldon about the scope of subpart 9, the SEC's counsel and Plaintiff's counsel agreed that the SEC would release to Plaintiff the same set of records that the FOIA Office had previously released to New Civil Liberties Alliance ("NCLA") in response to a similar FOIA request from NCLA. *See* SMF ¶13. The SEC has filed a motion for summary judgment that addresses, among other issues, these documents in litigation brought by NCLA. *NCLA v.*

6

*SEC*, No. 22-cv-03567-CJN (D.D.C.) (ECF 16-5 at 8-22).  *Id.*

On August 10, 2023, the SEC's FOIA Office issued an interim partial response to the FOIA request containing the documents the SEC had agreed to release in response to subpart 9 and released to the requester 55 pages of records, which were redacted in part under FOIA Exemptions 5 and 6, 5 U.S.C. § 552(b)(5) and (6).  SMF ¶14.  The SEC also withheld 2,422 pages of records in full pursuant to FOIA Exemptions 5 and 6, 5 U.S.C. § 552(b)(5) and (6).  *Id.*

On September 5, 2023, the Court entered a scheduling order that provides a means to resolve the parties' disputes concerning, among other things, the SEC's withholdings in connection with subparts 2, 4, 5, 7, 8, and 12(a) prior to the SEC's processing of all records potentially responsive to those subparts ("Order").  ECF 21 ¶5.  Pursuant to the Order, on October 27, 2023, the SEC provided Plaintiff with logs of the records responsive to subparts 2, 4, 5, 7, 8, and 12(a).  SMF ¶21.  Also on October 27, 2023, the FOIA Office issued an interim partial response to FOIA request subparts 2, 4, 5, 7, 8, and 12(a) and released to the requester 94 pages of exemplar records it had selected, which were redacted in part under FOIA Exemptions 5, 6, and 7(E), 5 U.S.C. § 552(b)(5), (6), 7(E).  SMF ¶22.  The FOIA Office also informed the requester that it was withholding 218 pages of records in full pursuant to FOIA Exemptions 5 and 6, 5 U.S.C. § 552(b)(5) and (6).  *Id.*

On November 21, 2023, the FOIA Office issued another interim partial response to subparts 2, 4, 5, 7, 8, and 12(a) of the FOIA request and released to the requester 64 pages of exemplar records Plaintiff had selected, which were redacted in part under FOIA

Exemptions 4, 5, 6, and 7(E), 5 U.S.C. § 552(b)(4), (5), (6), 7(E).  SMF ¶23.  The FOIA Office also informed the requester that it was withholding 207 pages of records in full pursuant to FOIA Exemptions 5 and 6, 5 U.S.C. § 552(b)(5) and (6).  *Id.*

The parties agreed that, on summary judgment, the issues to be resolved are:

1.  Whether FOIA request subpart 1 constitutes an improper FOIA request.

2.  Whether the SEC properly withheld information from the exemplar records responsive to subparts 2, 4, 5, 7, 8, and 12(a) and from the records released in connection with subpart 9.

3.  Whether the SEC has fully responded to subpart 3.

4.  Whether the SEC performed an adequate search for records responsive to subparts 6, 11, 12(b), and 12(c), and properly asserted that no responsive records exist with respect to those subparts.

ECF 21 ¶7.

## IV.    SUMMARY OF ARGUMENT

Summary judgment is appropriate in this FOIA litigation because no material facts are in dispute, and the SEC is entitled to judgment as a matter of law with respect to the four issues the parties identified.  First, the SEC correctly determined that FOIA request subpart 1 is not a proper FOIA request because it is vague and overly broad.  Second, the SEC has fully responded to subpart 3 because, by providing the names of all matters that the SEC has determined were affected by the control deficiency through the SEC's Second Statement and associated exhibits, the SEC has provided all existing responsive information. Third, staff in the SEC's Office of the General Counsel ("OGC") performed

adequate searches for records responsive to subparts 6, 11, 12(b), and 12(c) by consulting with SEC staff with knowledge about the existence of responsive records. Finally, the SEC properly withheld information from records released in connection with subparts 2, 4, 5, 7, 8, 9, and 12(a) pursuant to FOIA Exemptions 4, 5, 6, and 7(E).

## V.    **ARGUMENT**

Summary judgment is warranted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Most FOIA cases are resolved on motions for summary judgment. *Clemente v. FBI*, No. 1:20-cv-1527 (TNM), 2022 WL 17092585, at *1 (D.D.C. Nov. 21, 2022); *Verde v. FAA*, 287 F. Supp. 3d 661, 667 (S.D. Tex. 2018). "To demonstrate that summary judgment is appropriate in a FOIA case, the agency may rely on declarations to show that its search was reasonable and that any withheld documents properly fall within one or more FOIA exemptions." *Sokolow v. FDA*, No. 1:97-CV-252, 1998 U.S. Dist. LEXIS 23672, at *3 (E.D. Tex. Feb. 19, 1998), *aff'd*, 162 F.3d 1160 (5th Cir. 1998).

To demonstrate its entitlement to summary judgment, "[a]n agency may submit sufficiently detailed affidavits or declarations, a Vaughn index of the withheld documents, or both, to demonstrate that [it] has analyzed carefully any material withheld and provided sufficient information as to the applicability of an exemption." *Clemente*, 2022 WL 17092585, at *2 (internal quotations omitted); *Verde*, 287 F. Supp. 3d at 667. The SEC "bears the burden to show that the claimed exemptions apply." *Id.* The Court may accept as true the factual assertions in the SEC's declarations "unless the opposing

9

party submits his own affidavits or declarations or documentary evidence to the

contrary." *Media Research Ctr. v. U.S. DOJ*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011).

"The agency's declarations are sufficient for summary judgment if they are clear,

specific, and reasonably detailed; if they describe the search and the withheld information

in a factual and nonconclusory manner; and if there is no contradictory evidence on the

record or evidence of agency bad faith." *Sokolow*, 1998 U.S. Dist. LEXIS 23672, at *3.

An agency's declarations "receive a presumption of good faith." *Greenspan v. Bd. of

Governors of the Fed. Rsrv. Sys.*, 643 F. Supp. 3d 176, 185 (D.D.C. 2022) (internal

quotations omitted).

When addressing a motion for summary judgment, the Court "is to strike a balance

between adequate review and respecting an agency's expertise and, accordingly, should

not overstep the proper limits of the judicial role in FOIA review." *Dillon v. U.S. DOJ*,

444 F. Supp. 3d 67, 83 (D.D.C. 2020) (internal quotations omitted).

### A. Summary judgment is appropriate because no material facts are in dispute.

"FOIA cases do not ordinarily involve disputed facts." *Codrea v. Bureau of

Alcohol, Tobacco, Firearms & Explosives*, No. 21-2201 (RC), 2022 WL 4182189, at *3

(D.D.C. Sept. 13, 2022).  Like most FOIA cases, the only remaining dispute in this case

is legal in nature, namely whether subpart 1 constitutes an improper FOIA request,

whether the SEC performed adequate searches for records responsive to subparts 6, 11,

12(b), and 12(c), whether the SEC properly withheld information from the records

released in connection with subparts 2, 4, 5, 7, 8, 9, and 12(a), and whether the SEC fully

responded to subpart 3.  *See* ECF 21 ¶7.  Summary judgment is warranted because the

SEC has fully discharged its obligations under the FOIA, even after the court "consider[s]

the evidence and all reasonable inferences to be drawn therefrom in the light most

favorable to the" FOIA requester.  *Longas-Palacio v. U.S. Citizenship & Immigr. Servs.*,

No. H-21-2661, 2023 WL 2277128, at *2 (S.D. Tex. Feb. 28, 2023) (internal quotation

omitted).

### B.  The SEC correctly determined that FOIA Request Subpart 1 is an improper FOIA request.

The FOIA requires that a request "reasonably describes" the records sought.  *See* 5

U.S.C. § 552(a)(3)(A).  "A request reasonably describes records if the agency is able to

determine precisely what records are being requested."  *Rutila v. U.S. DOT*, No. 3:16-

CV-2911-B, 2022 WL 2359640, at *5 (N.D. Tex. June 30, 2022), *aff'd*, 72 F.4th 692 (5th

Cir. 2023) (internal quotations omitted); *see also Judicial Watch, Inc. v. Export-Import

Bank*, 108 F. Supp. 2d 19, 27 (D.D.C. 2000) ("A description of the requested documents

is adequate if it enables a professional agency employee familiar with the subject area to

locate the record with a reasonable amount of effort.").  An "agency is not required to

exercise 'clairvoyant capabilities' to determine the nature of the plaintiff's request."

*Nurse v. Sec'y of the Air Force*, 231 F. Supp. 2d 323, 330 (D.D.C. 2002).

Here, the FOIA Office correctly determined that subpart 1 of Plaintiff's FOIA

request is improper because it is vague and overly broad.  Subpart 1 of Plaintiff's FOIA

request seeks "all documentation and correspondence" regarding the "actions, inactions

and circumstances that constitute the 'control deficiency.'"  SMF ¶1.  It is not clear what

11

an "action," "inaction," or "circumstance[] that constitute[s] the 'control deficiency'"

would be.  Further, "all documentation and correspondence" regarding the

"circumstances that constitute the 'control deficiency'" appears to seek all records about

the control deficiency with no limitations on dates, context, or custodians.  This request is

overly broad and could encompass not only the 11 other subparts that seek records about

the control deficiency but every SEC record that refers to the control deficiency for any

reason.  Courts have found that requests that are so broad as to lack specificity are not

reasonably described.  *See, e.g.*, *Cable News Network, Inc. v. FBI*, 271 F. Supp. 3d 108,

110, 112 (D.D.C. 2017) (finding that request seeking "[a]ny and all documents and

records . . . [which] relate in any way to" any memos written by FBI director about

certain individuals was too vague); *Judicial Watch, Inc.*, 108 F. Supp. 2d at 26, 27-28

(request "unreasonably broad" that sought "all records pertaining to contracts between"

two individuals and companies doing business with China); *Rutila*, 2022 WL 2359640, at

*8 (request for "all records" in information technology service management system not

specific and overly broad).

Because Plaintiff did not reasonably describe the records sought in subpart 1,

subpart 1 is an improper FOIA request.

### C.  The SEC appropriately responded to FOIA Request Subpart 3.

Subpart 3 seeks "all documentation and correspondence" regarding "[a]ll instances

in which enforcement personnel accessed, or could have accessed, documents stored in

the administrative adjudications system, including the names of all cases in which

enforcement personnel accessed or could have accessed said system."  SMF ¶1.  By letter

dated January 20, 2023, the FOIA Office informed Plaintiff that responsive records were protected from release by the attorney work-product, deliberative process, and/or attorney-client privileges embodied in FOIA Exemption 5. *Id.* at ¶9.

Based on discussion during the August 2023 settlement conference with Magistrate Judge Sheldon, the SEC understands that, through subpart 3, Plaintiff seeks the records that are also the subject of a similar request that is being litigated in NCLA's case against the SEC. *See* SMF ¶16; ECF 16-5 at 5-6, *NCLA v. SEC*, No. 22-cv-03567-CJN (D.D.C.). Specifically, Plaintiff seeks the names of all matters affected by the control deficiency, including any closed, settled, or otherwise disposed-of matters. *See id.* Thus, instead of using the FOIA to seek documents that are not otherwise available to the public, Plaintiff is using the FOIA to seek information about the status and progress of the SEC's still-ongoing internal review.

As explained in the *NCLA* litigation, the SEC's Second Statement and associated exhibits allow Plaintiff to access the information he seeks, specifically information about every administrative proceeding in which the SEC has made a determination that one or more memoranda from OGC's Adjudication Group ("Adjudication") were accessed by staff in the SEC's Division of Enforcement ("Enforcement"). *See* SMF ¶17; ECF 16-5 at 5-6, 22-24, *NCLA v. SEC*, No. 22-cv-03567-CJN (D.D.C.). By providing the names of all matters that the SEC has determined were affected by the control deficiency, the SEC has provided all existing responsive information. SMF ¶¶17-18. As such, there is no dispute concerning the application of any FOIA exemptions.

To the extent that Plaintiff seeks information for additional administrative proceedings not discussed in the Second Statement, such a request would be an improper FOIA request because it would be asking the SEC to conduct further analysis to determine whether, and in which of those administrative proceedings, Enforcement staff accessed adjudication memoranda. SMF ¶17. Such a request would be an improper FOIA request because FOIA does not require agencies to "undertake research, analysis, and formulation of opinions." *Hall & Assocs. v. U.S. EPA*, No. 16-5315, 2018 WL 1896493, at *2 (D.C. Cir. Apr. 9, 2018). In addition, the request is not focused on obtaining records that exist but on having the SEC create records that do not exist. Agencies do not have an obligation to create records to respond to FOIA requests. *See Jarvis v. Comm'r, Soc. Sec. Admin.*, No. 18-5170, 2018 WL 6722401, at *1 (D.C. Cir. Dec. 18, 2018) ("no duty to create statistical records in response to appellant's FOIA request"); *Skinner v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 12-5319, 2013 WL 3367431, at *1 (D.C. Cir. May 31, 2013) ("FOIA does not require federal agencies to create or obtain records"). Because a request for information about additional matters would be an improper FOIA request, Plaintiff has received all the information the SEC currently has that is responsive to subpart 3.

### D. The SEC performed adequate searches for records responsive to FOIA Request Subparts 6, 11, 12(b), and 12(c).

The SEC has fully discharged its obligations under the FOIA in connection with FOIA Request Subparts 6, 11, 12(b), and 12(c). To obtain summary judgment in a FOIA case in the face of an assertion that it failed to conduct an adequate search, an agency

14

"must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Morgan v. FBI*, No. A-15-CA-1255-SS, 2016 WL 7443397, at *2 (W.D. Tex. May 23, 2016) (internal quotations omitted).  The SEC "need not uncover every existing document" (*Clemente*, 2022 WL 17092585, at *2) and "has discretion to craft its search to meet [the] standard" (*Machado Amadis v. DOJ*, 388 F. Supp. 3d 1, 14 (D.D.C. 2019), *aff'd*, 971 F.3d 364 (D.C. Cir. 2020) (internal quotations omitted)).  *See also Elec. Privacy Info. Ctr. v. FBI*, No. 1:17-cv-00121 (TNM), 2018 WL 2324084, at *2 (D.D.C. May 22, 2018) ("Searching for records requires 'both systemic and case-specific exercises of discretion and administrative judgment and expertise,' and is 'hardly an area in which the courts should attempt to micromanage the executive branch.'").  "The adequacy of the search, in turn, is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case."  *Morgan*, 2016 WL 7443397, at *2 (internal quotations omitted).

The SEC "may meet its burden based on affidavits or declarations that are entitled to a 'presumption of legitimacy.'"  *Brewer v. U.S. DOJ*, No. 3:18-CV-1018-B-BH, 2019 WL 3948351, at *3 (N.D. Tex. July 30, 2019), *findings and recommendation adopted*, 2019 WL 3947132 (N.D. Tex.) (Aug. 21, 2019).  Here, the SEC has provided a declaration from an attorney in the SEC's Office of the General Counsel who is knowledgeable about the searches conducted for subparts 6, 11, 12(b), and 12(c).  *See* Tallarico Decl.  This declaration describes the procedures SEC staff used to conduct searches for documents responsive to these subparts.  *See* Tallarico Decl. ¶¶10-18.

15

Subparts 6 seeks records concerning "[t]he Commission's findings regarding the effects of the control deficiency on all other cases in which the Commission identified that enforcement personnel accessed, or could have accessed the administrative adjudications system." SMF ¶1. Subpart 11 seeks records about "[t]he involvement of the Commission's Office of Inspector General ('OIG') in the Commission's discovery, investigation, and remedy of the control deficiency and the OIG's subsequent findings, if any." *Id*. Subparts 12(b) and (c) seek records concerning the Commission's determination to issue "the pending report referenced" in the April 5 Statement and "any future actions the Commission plans to take regarding control deficiencies between the Adjudicatory and Enforcement Divisions." *Id*.

To search for responsive records concerning these four subparts, OGC staff consulted with the SEC staff handling the internal review of the control deficiency because this group of individuals was most familiar with the subject matter of the request and was most likely to know whether and where responsive records would exist. SMF ¶¶5-8 . For subpart 6, SEC staff stated that, at that time, neither they nor other SEC officers or staff had determined the effects of the control deficiency on administrative proceedings that were not discussed in the SEC's April 5 Statement, so no responsive records were identified. *Id.* at ¶5. For subpart 11, SEC staff stated that, when it was discovered that Enforcement staff had access to Adjudication memoranda, the OIG was informed but was not involved in the discovery, internal review, or remedy of the control deficiency. *Id.* at ¶6. OGC staff also consulted with OIG staff about the existence of responsive records to subpart 11. *Id.* OIG staff's search did not identify any responsive

16

records and advised OGC staff accordingly. *Id.* For subpart 12(b), SEC staff handling

the internal review of the control deficiency stated that, at that time, neither they nor

other SEC officers or staff had made final determinations about the "pending report

referenced" in the April 5 Statement. *Id.* at ¶7. Finally, for subpart 12(c), SEC staff

stated that, apart from the remedial actions described in the April 5, 2022 Statement,

neither they nor other SEC officers or staff had determined to take future actions in

connection with the control deficiency. *Id.* at ¶8. As such, SEC staff did not identify

records responsive to subparts 6, 11, 12(b), and 12(c).

Because SEC staff sought information about potentially responsive records from

those responsible for such information, the SEC's search was appropriate in these

circumstances.

### E. The SEC properly withheld information under FOIA Exemptions 4, 5, 6, and 7(E) in responding to Subparts 2, 4, 5, 7, 8, 9, and 12(a).

#### 1. Agencies can withhold exempt information when responding to FOIA requests.

Though under the FOIA an agency must make certain government records

available to the public upon proper request, the FOIA contemplates that some

information may be kept from the public, as described in the FOIA's nine enumerated

exemptions allowing the government to withhold documents or portions of documents.

*See* 5 U.S.C. § 552(b)(1)-(9); *Jobe v. NTSB*, 1 F.4th 396, 402 (5th Cir. 2021) ("FOIA

expressly recognizes that important interests are served by its exemptions, and those

exemptions are as much a part of FOIA's purposes and policies as the statute's disclosure

requirement.") (internal quotation omitted).  The agency bears the burden of justifying

the withholding of information under an exemption.  *Longas-Palacio*, 2023 WL 2277128,

at *2.

If an exemption applies, an agency may withhold the information only if it

"reasonably foresees that disclosure would harm an interest protected by [a FOIA]

exemption," "consider[s] whether partial disclosure of information is possible," and

"take[s] reasonable steps necessary to segregate and release nonexempt information."  5

U.S.C. § 552(a)(8)(A).  "A record is not reasonably segregable if 'exempt and nonexempt

information are inextricably intertwined, such that the excision of exempt information

would impose significant costs on the agency and produce an edited document with little

informational value.'"  *Elec. Privacy Info. Ctr.*, 2018 WL 2324084, at *6.  The SEC

"enjoy[s] 'a presumption that they complied with the obligation to disclose reasonably

segregable material.'"  *Id.*

In support of an exemption claimed under the FOIA, an agency may rely on

declarations describing the applicability of a FOIA exemption to information that the

agency has withheld.  *Greenspan*, 643 F. Supp. 3d at 185.  An agency's declarations

support summary judgment if they "describe[] the justifications for withholding the

information with specific detail" and "demonstrate[] that the information withheld

logically falls within the claimed exemption."  *ACLU v. U.S. Dep't of Defense*, 628 F.3d

612, 619 (D.C. Cir. 2011).  "The Court may grant summary judgment based solely on the

agency's declarations if neither record evidence nor evidence of the agency's bad faith

contradicts them."  *Greenspan*, 643 F. Supp. 3d at 186.  "Ultimately, an agency's

justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *ACLU*, 628 F.3d at 619 (internal quotations omitted).

In addition to declarations, the SEC may rely on a *Vaughn* index to justify its withholdings. *Chavis v. U.S. DOJ*, No. 1:20-cv-00638 (TNM), 2021 WL 1668069, at *4 (D.D.C. Apr. 28, 2021); *Amiri v. NSF,* No. 1:20-cv-02006 (TNM), 2021 WL 4438910, at *5 (D.D.C. Sept. 28, 2021) ("[i]n FOIA cases, agencies typically provide their justifications for withholding information in a *Vaughn* index" which "must contain an adequate description of the records and a plain statement of the exemptions relied upon") (internal quotations omitted).  Both the declarations and the *Vaughn* index have a presumption of good faith.  *Chavis*, 2021 WL 1668069, at *4.

### 2. The SEC appropriately withheld information under Exemption 4.

Exemption 4 exempts from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential."  5 U.S.C. § 552(b)(4).  When an agency withholds non-trade-secret information under Exemption 4, an agency "must show that the withheld information is (1) obtained from a person, (2) commercial or financial, and (3) confidential or privileged."  *Greenspan*, 643 F. Supp. 3d at 187.  The FOIA defines a "person" to include "an individual, partnership, corporation, association, or public or private organization other than an agency."  5 U.S.C. § 551(2); *see also Sokolow*, 1998 U.S. Dist. LEXIS 23672, at *6 ("Corporations are considered persons under the FOIA.")*.*

"Information is 'commercial' under Exemption 4 if the submitter has a 'commercial interest' in it."  *Greenspan*, 643 F. Supp. 3d at 187 (describing Exemption

4's "broad[]" protection.  Exemption 4 "'reaches . . . broadly and applies (among other situations) when the provider of the information has a commercial interest in the information submitted to the agency.'"  *Soghoian v. OMB*, 932 F. Supp. 2d 167, 174 (D.D.C. 2013) (quoting *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 437 F.3d 312, 319 (D.C. Cir. 2006)).  "At least where commercial or financial information is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy, the information is 'confidential' within the meaning of Exemption 4."  *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019); *see also Huddleston v. FBI*, No. 4:20-CV-00447, 2022 WL 4593084, at *17 (E.D. Tex. Sept. 29, 2022) (information is confidential "if its disclosure is likely to impair the government's ability to obtain necessary information in the future or to cause substantial harm to the competitive position of the person from whom the information was obtained") (internal quotations omitted).

Here, the SEC withheld portions of an invoice provided by BRG in connection with its work on the internal review of the control deficiency.  *See* SMF ¶¶24-25. Specifically, the SEC withheld BRG employees' billing rates and BRG's bank account and payment information ("Protected Information").  *See id.*  The Protected Information constitutes commercial or financial information because BRG has a commercial interest in the billing rates it charges for its employees' work and in its bank account information. SMF ¶27.  Though BRG discloses that information to its clients, it does so pursuant to communications between BRG experts and clients, non-disclosure agreements, and confidentiality terms in engagements, all pertaining to the confidential nature of BRG's

engagements and the confidential nature of BRG's financial information and strategic billing rates.  *Id.* at ¶28.  BRG expected that under the SEC's statutes, regulations, and practices regarding the treatment of non-public information, the SEC would not disclose the Protected Information.  *Id.* at ¶29.  The SEC never indicated to BRG that it would not treat this information as private and confidential.  *Id.*

In addition, the Protected Information does not contain any non-exempt information that could be segregated from the exempt information (SMF ¶47), and it is reasonably foreseeable[2] that releasing BRG's billing details and bank account information would cause harm (SMF ¶30).  BRG's competitive pricing strategy is proprietary and confidential, and disclosure of such pricing would give an advantage to competitors.  SMF ¶30.  Further, releasing BRG's private bank account information would constitute harmful and unnecessary public disclosure of confidential company information because any member of the public would have the ability to try to access BRG's bank account.  *Id.*

As such, the Protected Information is appropriately withheld under Exemption 4. *See, e.g.*, *Huddleston*, 2022 WL 4593084, at *18 (Exemption 4 protected release of report prepared by third party that "was treated as private," "shared with an expectation the [agency] would not disclose the information publicly," "the information in the [r]eport

---

[2] Few courts have considered what burden the foreseeable harm requirement imposes on agencies seeking to withhold information under Exemption 4.  *See Seife v. U.S. FDA*, 43 F.4th 231, 235 (2d Cir. 2022).  Even if that requirement does apply, the SEC has met its burden here because it has "explain[ed] how disclosure would harm an interest protected by this exemption, such as by causing genuine harm to economic or business interests." *Greenspan*, 643 F. Supp. 3d at 189 (internal quotations omitted).

was proprietary in nature and any public release would be detrimental to their commercial interests"); *Greenspan*, 643 F. Supp. 3d at 189 ("The declarants concretely explain how disclosure would cause harm to an interest Exemption 4 protects by articulating a link between the specified harm and the specific information contained in the material withheld.") (internal quotations omitted).

> **3. Exemption 5 allows agencies to withhold documents protected by the attorney work-product doctrine, the attorney-client privilege, and the deliberative process privilege.**

Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Under a principle courts have called the consultant corollary, communications are "intra-agency" if they "ha[ve] been received by an agency, to assist it in the performance of its own functions, from a person acting in a governmentally conferred capacity other than on behalf of another agency-*e.g.,* in a capacity as an employee or consultant to the agency." *Dep't of Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 9-10 (2001) (internal quotation omitted); *see also Jobe*, 1 F.4th at 404 ("'intra-agency' also embraces 'records of communications between an agency and outside consultants . . . if they have been created for the purpose of aiding the agency's deliberative process'"); *Gov't Accountability Project v. U.S. Dep't of State*, 699 F. Supp. 2d 97, 104 (D.D.C. 2010) ("[T]he Supreme Court has implicitly recognized a consultant corollary that extends Exemption 5 to cover records submitted by outside consultants to government agencies when those consultants

played essentially the same part in an agency's process of deliberation as documents prepared by agency personnel might have done.") (internal quotations omitted).  Courts have interpreted Exemption 5 to cover "the privileges available to Government agencies in civil litigation," which includes the attorney work-product doctrine, the attorney-client privilege, and the deliberative process privilege.  *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021).

> **4.  The SEC properly determined that communications with BRG, General Dynamics, Integrated Systems Inc., and Maximus + Attain contractors were intra-agency communications.**

Communications with persons who are not officers or employees of an agency are intra-agency under the consultant corollary if "'the consultant does not represent an interest of its own, or the interest of any other client, when it advises the agency that hires it.'"  *McKinley v. Bd. of Governors of the Fed. Reserve Sys.*, 647 F.3d 331, 336 (D.C. Cir. 2011) (quoting *Klamath*, 532 U.S. at 11).  The consultant's "only obligations [must be] to truth and its sense of what good judgment calls for, and in those respects the consultant functions just as an employee would be expected to do."  *Klamath*, 532 U.S. at 11.  An agency may provide evidence in an agency declaration that the agency solicited the advice or assistance of a contractor and that the contractor's purpose was to provide advice or assistance.  *See Democracy Forward Found. v. Centers for Medicare & Medicaid Servs.*, No. CV 18-635 (JDB), 2020 WL 1508508, at *1 (D.D.C. March 30, 2020).

Communications with BRG are intra-agency because, as reflected in a contract between the SEC and BRG, the SEC retained BRG to support its internal review relating to the control deficiency.  SMF ¶33.  During the internal review, BRG contractors compiled forensic data and engaged in discussion with SEC staff as part of SEC staff's review of certain databases to assess the scope and potential impact of the SEC's control deficiency.  *Id.*  BRG conducted forensic analysis at the request of the SEC and to support the SEC's work.  *Id.*  BRG has no interest related to the SEC's control deficiency other than providing assistance pursuant to its contract with the SEC.  *Id.*

Communications with General Dynamics, Integrated Systems Inc., and Maximus + Attain staff are also intra-agency because the SEC retained contractors from those entities to support the SEC's Office of Information Technology ("OIT").  SMF ¶34.  During the internal review, those contractors helped OIT staff provide information to BRG and the review team so that BRG could conduct its forensic analysis.  *Id.*  General Dynamics, Integrated Systems Inc., and Maximus + Attain contractors performed this work at the request of OIT and to support the SEC's work.  *Id.*  General Dynamics, Integrated Systems Inc., and Maximus + Attain staff were not retained to assist with the internal review and have no interest related to the SEC's control deficiency other than providing assistance to OIT pursuant to its contract with the SEC.  *Id.*

### 5.  The SEC properly withheld information under the attorney work-product doctrine.

The attorney work-product doctrine protects records prepared in anticipation of litigation "by or for another party or by or for that other party's representative (including

the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." *McKinley*, 647 F.3d at 341 (internal quotations omitted); *see also* Fed. R. Civ. P. 26(b)(3) (codifying privilege).  For purposes of the attorney work-product doctrine, "[w]hile litigation need not be imminent or certain in order to satisfy the anticipation of litigation prong of the test, [the D.C. Circuit] has held that at the very least some articulable claim, likely to lead to litigation, must have arisen, such that litigation was fairly foreseeable at the time the materials were prepared." *Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 75 (D.D.C. 2003) (internal quotations omitted); *see also Bradley v. IRS*, No. 5:17-CV-737-DAE, 2019 WL 4980459, at *5 (W.D. Tex. Aug. 5, 2019) ("While the [agency] was not preparing for the case currently before the Court, the work product privilege 'protects materials prepared for *any* litigation or trial as long as they were prepared by or for a party to the subsequent litigation.'").

As detailed in the *Vaughn* indices, the SEC withheld information concerning its internal review of the control deficiency pursuant to the attorney work-product doctrine embedded in FOIA Exemption 5.  *See* Ex. A-G; SMF ¶31.  All of the information the SEC withheld under Exemption 5 is attorney work-product.  SMF ¶32.  SEC attorneys in OGC were informed of the control deficiency shortly after its discovery and, immediately following the discovery, they, along with Enforcement attorneys, determined what steps should be taken to prevent Enforcement staff from accessing internal memos relating to the Commission's adjudicatory functions.  *Id.*  SEC attorneys in OGC also directed and supervised the internal review of the control deficiency, which was conducted by SEC staff and contractors, in anticipation of litigation involving SEC administrative

proceedings tied to the control deficiency. *Id.* The control deficiency relates "to the separation of enforcement and adjudicatory functions within the agency's system for administrative adjudication." *See Second Statement*, *supra.* Specifically, "for a period of time, certain databases maintained by [the SEC's] Office of the Secretary ('OS') were not configured to restrict access by staff from [the SEC's] Division of Enforcement ('Enforcement') to memoranda drafted by staff from the Adjudication Group ('Adjudication') in [the SEC's] Office of the General Counsel ('OGC')." *Id.* Litigation relating to the control deficiency was foreseeable at the time of the internal review because the SEC recognized that parties in affected administrative proceedings might raise claims in the administrative proceedings, in appeals from those proceedings, or in independent cases in federal courts related to the control deficiency. SMF ¶35. Indeed, recognizing the connection to ongoing litigation, following the issuance of the April 5, 2022 Statement, the Department of Justice, as the SEC's representative, submitted information regarding the control deficiency to the courts in which the litigation referred to in the April 5, 2022 Statement was pending.[3] As Plaintiff is a respondent in *SEC v. Jarkesy* currently pending before the Supreme Court (No. 22-859), Plaintiff is well aware of the relevance of these matters to litigation.

---

[3] *See, e.g.*, Notice of Supplemental Authorities, Doc. 00516268389, *Jarkesy v. SEC*, No. 20-61007 (5th Cir. Apr. 5, 2022); Letter from the Solicitor General, *SEC v. Cochran*, No. 21-1239 (S. Ct. Apr. 8, 2022), (*available at* https://www.supremecourt.gov/DocketPDF/21/21-1239/220641/20220408165202974_Letter%2021-1239%20final.pdf)

The work product doctrine protects information obtained from or provided to BRG in the same way it protects the SEC's internal work product because OGC retained BRG to assist in the internal review of the control deficiency. *Id.* During the internal review, BRG contractors compiled forensic data and engaged in discussion with SEC staff to help SEC staff assess the scope and potential impact of the SEC's control deficiency on both ongoing and potential litigation. *See* Ex. F; SMF ¶33.

Courts have found that information from similar situations, including internal agency investigations, is appropriately withheld pursuant to the attorney work-product doctrine. *See, e.g.*, *Judicial Watch, Inc. v. U.S. DOJ*, 806 F. App'x 5, 7 (D.C. Cir. 2020) (holding that DOJ "adequately demonstrated that the [FBI forms used by non-attorney agents] fit within the attorney work-product privilege" where forms were obtained because of prospect of litigation and work was conducted under attorney direction); *Bradley*, 2019 WL 4980459, at *5 n.5 (attorney work-product protected records created as part of agency investigation); *Hertzberg*, 273 F. Supp. 2d at 77-78 (protecting "statements of Forest Service employees taken by Forest Service investigators" because employees conducting investigation and preparing statements were "party representatives" under Federal Rule of Civil Procedure 26(b)(3)); *Leopold v. U.S. DOJ*, 487 F. Supp. 3d 1, 11-12 (D.D.C. 2020) (noting that "in the FOIA context, the District of Columbia Circuit has long held that documents prepared by non-attorneys in anticipation of litigation may also be protected by the privilege" and holding attorney work-product privilege applied to FBI interview-related records prepared by law enforcement agents) (cleaned up).

Because the withheld information was created by SEC staff and contractors as part of an internal review led by OGC in reasonable anticipation of litigation, information about the internal review fits squarely within the attorney work-product doctrine embedded in Exemption 5.

The SEC has satisfied its obligation to segregate any non-exempt information because courts have recognized that "[i]f a document is fully protected as work product, then segregability is not required." *Judicial Watch, Inc. v. U.S. DOJ*, 432 F.3d 366, 371 (D.C. Cir. 2005) ("factual material is itself privileged when it appears within documents that are attorney work product"). In addition, the SEC has disclosed all portions of information protected by the work-product doctrine that it reasonably foresees could be disclosed without causing harm. SMF ¶47. Disclosure of the information the SEC is withholding under the attorney work-product doctrine would deprive the SEC of its ability to withhold that information in future litigation, and consequently would deprive SEC attorneys of a zone of privacy within which to weigh facts and evidence and evaluate how to handle future litigation. SMF ¶36; *see Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 736 F. Supp. 2d 202, 209 (D.D.C. 2010) ("privilege aims to protect the adversary trial process by providing attorneys a zone of privacy within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories"). Thus, the SEC has appropriately withheld information under the work-product doctrine component of Exemption 5.

### 6.  The SEC properly withheld information under the deliberative

process privilege.

The deliberative process privilege applies to material that is both "predecisional"

and "deliberative."  *Longas-Palacio*, 2023 WL 2277128, at *4.  A record is

"predecisional if it was 'generated before the agency's final decision on the matter' and

deliberative if it was 'prepared to help the agency formulate its position.'"  *Id.*; *Elec.*

*Frontier Found. v. U.S. DOJ*, 739 F.3d 1, 4 (D.C. Cir. 2014) (Exemption 5 "allows an

agency to withhold 'all papers which reflect the agency's group thinking in the process of

working out its policy and determining what its law shall be[.]'").

"The deliberative process privilege protects documents from disclosure which

reflect[] advisory opinions, recommendations and deliberations comprising part of a

process by which governmental decisions and policies are formulated."  *Longas-Palacio*,

2023 WL 2277128, at *4 (internal quotations omitted).  The deliberative process

privilege also "covers recommendations, draft documents, proposals, suggestions, and

other subjective documents which reflect the personal opinions of the writer rather than

the policy of the agency."  *Competitive Enter. Inst. v. U.S. EPA*, 232 F. Supp. 3d 172, 184

(D.D.C. 2017) (internal quotations omitted).  "To encourage candor, which improves

agency decisionmaking, the privilege blunts the chilling effect that accompanies the

prospect of disclosure."  *Sierra Club*, 141 S. Ct. at 785.  The privilege also "protects

agencies from being 'forced to operate in a fishbowl.'"  *Elec. Frontier Found.*, 739 F.3d

at 7.  The deliberative process privilege "calls for disclosure of all opinions and

interpretations which embody the agency's effective law and policy, and the withholding

of all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be." *Id.* (internal quotations omitted). "[C]ourts have allowed agencies to withhold factual information that is 'inextricably intertwined' with deliberative material." *Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 203 (D.D.C. 2007), *report and recommendation adopted*, 520 F. Supp. 2d 194 (D.D.C. Nov. 8, 2007).

As detailed in the *Vaughn* Indices, the SEC withheld information about its discovery and its internal review of the control deficiency under the deliberative process privilege embedded in Exemption 5. *See* Ex. A-G.  The withheld records consist of pre-decisional discussion and analysis concerning several different subjects relating to the control deficiency. *See* Ex. A-G; SMF ¶37.  Specifically, the records reflect staff's deliberations concerning the discovery and review of the control deficiency prior to the agency's final findings about the control deficiency. *See id*.  The withheld information reflects deliberations about several different decisions relating to the control deficiency.

- In numerous records, SEC staff discussed possible courses of action, remedial steps, and steps to take in the internal review after discovery of the control deficiency. *See, e.g.*, Ex. A at 1-5, 8-17; Ex. B; Ex. C at 3, 5-6; Ex. D; Ex. G at 12.  This analysis occurred prior to final agency decisions or findings concerning the internal review. *See id.*

- In certain records, SEC staff discussed retaining BRG to support its internal review relating to the control deficiency. *See, e.g.*, Ex. E at 1-4.  This

discussion occurred prior to final decisions about the scope of BRG's work and about its role in the internal review. *See id.*

- In the records described in Exhibits C, D, and F, SEC staff and contractors compiled and discussed information, including forensic data, used to assess the scope and potential impact of the SEC's control deficiency. *See, e.g.*, Ex. C at 1-2; Ex. D at 8; Ex. F.[4]  The compilations reflect deliberations about how to conduct the internal review and about what was important to focus on. *See id.*  This analysis occurred prior to final agency decisions or findings concerning the internal review. *See id.*

- In numerous records, SEC staff and contractors discussed, analyzed, and edited draft language and documents concerning the control deficiency. *See, e.g.*, Ex. A at 6-7, 11-2; Ex. D at 10; Ex. E at 1, 6; Ex. F at 23; Ex. G at 1-5, 7, 9, 11-12.  The documents and language withheld were not adopted in final, and they were written before the Commission made its determinations about the issues discussed in the documents. *See id.*

All of this information is exempt under the deliberative process privilege.  Courts have found that internal correspondence between agency staff about factual and policy matters before an agency develops a position is appropriately withheld pursuant to the deliberative process privilege.  *See Longas-Palacio*, 2023 WL 2277128, at *4 (agency

---

[4] The compiled information includes internal SEC memos that are protected by the deliberative process privilege both because of their role in the internal review and because they contain deliberations and recommendations relating to administrative proceedings pending before the SEC.  *See, e.g.*, Ex. C at 1-2, 6-7, 8-9.

properly withheld records containing "interoffice discussions, analysis, and recommendations designed to assist [agency] in formulating its position"); *Martin v. EEOC*, No. 85-2266, 1986 WL 31595, at *3 (S.D. Tex. March 25, 1986) (deliberative process privilege applied to investigative file records, which contained "factual portions," "relied upon by [agency staff] in arriving at a decision . . . , and involved the investigators' selections of the statements and facts deemed to be probative in the case, which in turn constituted a judgmental decision"); *Claudio v. SSA*, No. H-98-1911, 2000 WL 33379041, at *5 (S.D. Tex. May 23, 2000) (deliberative process privilege applied to investigators' and special counsel's notes and findings concerning personnel investigation even where "documents contain[ed] a recitation of facts").

Similarly, courts have found that discussion among agency staff and contractors about data is appropriately withheld pursuant to the deliberative process privilege. *Reliant*, 520 F. Supp. 2d at 204-06 (deliberative process privilege applied to draft reports about investigation, emails and other records with substantive discussion of issues under investigation, and spreadsheets and tables analyzing raw data); *Center for Biological Diversity v. U.S. EPA*, 369 F. Supp. 3d 128, 138 (D.D.C. 2019) (finding that deliberative process privilege protected factual information that was "inextricably intertwined" with deliberative discussions and was "selected, organized, and presented in such a way that requires 'the exercise of discretion and judgment calls,' and does not amount to an 'essentially technical' recitation of scientific data or other facts"); *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 465 (D.C. Cir. 2014) (concluding that deliberative process privilege protected internal draft agency history and noting that "the selection of the facts thought

to be relevant" is part of deliberative process because "it necessarily involves policy-oriented *judgment*") (internal quotations omitted); *Elec. Privacy Info. Ctr. v. U.S. DOJ*, 320 F. Supp. 3d 110, 119 (D.D.C. 2018) ("The deliberative process privilege protects a compilation of factual material 'assembled through an exercise of judgment in extracting pertinent material from a vast number of documents for the benefit of an official called upon to take discretionary action.'"); *W & T Offshore, Inc. v. U.S. DOC*, No: 03-2285 SECTION: I/2, 2004 WL 2115418, at *3 (E.D. La. Sept. 21, 2004) (concluding that deliberative process privilege applied to records "filled with opinions, recommendations, considerations, concerns and insights of agency employees" and "[a]ny factual information contained in the withheld portions is organized or analyzed in such a way that it too may be classified as deliberative").

Additionally, courts have found that internal correspondence between agency staff about draft agency documents as well as the draft documents themselves are appropriately withheld pursuant to the deliberative process privilege. *See Techserve Alliance v. Napolitano*, 803 F. Supp. 2d 16, 27 (D.D.C. 2011) (D.C. "Circuit has held that draft documents likely are to be protected under the deliberative process privilege because draft documents, by their very nature, are typically pre-decisional and deliberative") (internal quotations omitted); *Lewis v. U.S. Dep't of Treasury*, No. 17-cv-0943 (DLF), 2020 WL 1667656, at *7 (D.D.C. Apr. 3, 2020) (Exemption 5 applied to draft documents "prepared to help [agency] officials finalize the language in the agency's proposed rulemaking" that "contain[ed] comments and redline edits . . . reflect[ing] the give-and-take of the consultative process between [agency] officials regarding what

33

material the final document should include") (cleaned up), *aff'd*, 851 F. App'x 214 (D.C.

Cir. 2021); *ACLU v. CIA*, No. 1:18-cv-2784 (CJN), 2022 WL 306360, at *8 (D.D.C. Feb.

2, 2022) ("draft documents, email exchanges, and preliminary communications in

response to Senate, White House, and media inquiries" appropriately withheld under

deliberative process privilege because they reflect agency's "'internal and confidential

decision-making process'" and agency "did not treat the documents as final, but rather as

preliminary versions subject to feedback and change"); *Public Employees for Envtl.*

*Responsibility v. U.S. EPA*, No. 18-cv-2219 (BAH), 2021 WL 2515007, at *9-10 (D.D.C.

June 18, 2021) (Exemption 5 protected version of agency assessment because it was

identified as draft version, preceded final assessment, "contain[ed] redlines, indicating

proposed changes, and comment bubbles" and "comprise[d] the agency's tentative

selection and synthesis of facts and studies upon which to base its assessment").

Because the SEC's internal analysis pre-dated the SEC's final findings about the

control deficiency and reflects deliberation about the internal review, the records come

within the deliberative process privilege.

Additionally, SEC staff have provided all non-exempt information that could be

segregated from exempt information and have reviewed the records responsive to the

FOIA request to determine if it is reasonably foreseeable that disclosure would harm an

interest protected by the deliberative process privilege.  SMF ¶47.  Disclosure of the

information relating to the SEC's internal review that the SEC is withholding under the

deliberative process privilege would chill ongoing discussions about addressing the

control deficiency the SEC identified as well as discussions about addressing future

issues the SEC may face.  SMF ¶38.  Public release of these discussions would also likely deter SEC staff's future willingness to share ideas, recommendations, and preliminary thoughts on issues and matters before them.  *Id*.  These confidential discussions and the data generated from the discussions also formed the basis for advice conveyed to SEC officials who needed to decide what actions to take in light of the internal review.  *Id*.  If these documents were disclosed in response to FOIA requests, staff across the SEC would likely limit their discussions and inhibit their candor in discussing issues relating to the control deficiency and other issues that may arise in the future.  *Id*.  Such chilling would make it more difficult for SEC leadership to obtain the advice necessary to efficiently and effectively address complex issues about its operations and would hamper comprehensive reviews designed to address and improve those issues.  *Id*.  Staff conducting the internal review as well as staff providing information and data in support of the review would also be more reluctant to express their opinions and to explore possible approaches to addressing issues in other internal reviews.  *Id.*

Additionally, release of the discussions concerning the draft Commission statement, as well as the draft itself, would likely cause confusion to the public because these discussions and the draft statement contain deliberations about what the final statement should be and are not reflective of the publicly released statement.  SMF ¶39.  Overall, disclosure would jeopardize the candid and comprehensive discussions that are essential for efficient and effective decision-making.  SMF ¶42; *see Reliant*, 520 F. Supp. 2d at 204 (releasing documents related to factual investigation "would allow a reader to

probe too deeply into the thought processes of the drafters and would have a chilling effect on communication between agency employees").

Thus, the SEC has appropriately withheld information under the deliberative process privilege component of the Exemption 5.

### 7. The SEC properly withheld information under the attorney-client privilege.

"The attorney-client privilege protects communications between attorneys and their clients that are intended to be confidential." *Longas-Palacio*, 2023 WL 2277128, at *4 n.8. "Typically, 'the Government may invoke the attorney-client privilege in civil litigation to protect confidential communications between Government officials and Government attorneys.'" *Id.*; *see also Gahagan v. USCIS*, No. 15-2540 Section "R" (3), 2017 WL 3393993, at *2 (E.D. La. Aug. 8, 2017) ("In the context of a FOIA request, the agency is the client and the agency's lawyers are the attorneys for the purposes of attorney-client privilege.") (internal quotations omitted).

As detailed in the *Vaughn* Indices, the SEC withheld information reflecting confidential legal advice provided by SEC OGC attorneys and from DOJ attorneys representing the SEC in litigations. *See* SMF ¶40; Ex. D at 1, 14; Ex. G at 2, 4, 7, 12. Specifically, SEC staff conducting the internal review of the control deficiency sought legal advice from OGC staff in connection with that review. Ex. D at 1. Additionally, in light of the control deficiency, SEC staff sought legal advice from DOJ attorneys representing the SEC in *Cochran v. SEC* and *SEC v. Jarkesy*. Ex. D at 8; Ex. G at 2, 3, 5,

9.[5]  Courts routinely protect these types of communications between agency staff and their attorneys.  *See Longas-Palacio*, 2023 WL 2277128, at *4 n.8 (exempting from release "legal memorandum providing legal advice from a government attorney to a government official"); *W & T Offshore*, 2004 WL 2115418, at *4 (Exemption 5 applied to "legal advice from [agency's] office of general counsel" to agency employee); *Appleton v. FDA*, 451 F. Supp. 2d 129, 144 & n.10 (D.D.C. Aug. 21, 2006) (attorney-client privilege applied to "various documents drafted or sent to [agency] attorneys concerning various legal matters," including "recommendation for enforcement action," "notes concerning meeting," "e-mail communications" about lawsuit against agency, and interview memoranda); *Gahagan*, 2017 WL 3393993, at *2-3 (discussions among agency attorney and non-attorney personnel about lawsuit filed against agency protected by both attorney-client privilege and deliberative process privilege).

SEC staff have segregated all non-exempt information from exempt information. SMF ¶47.  Further, the release of the information protected by the attorney-client privilege would cause harm because, if SEC staff could not seek or provide legal advice without fear of public disclosure, the relationship of trust between SEC staff and their attorneys would be severely undermined.  SMF ¶41.  SEC staff would be reluctant to seek legal advice before making decisions about issues with significant legal consequences, which would hamper agency functioning.  SMF ¶40.  As such, the SEC

---

[5] The attorney-client privilege also protects internal SEC memos gathered by the staff conducting the internal review that contain legal advice from Adjudications staff to the SEC's Commissioners.  *See, e.g.*, Ex. C at 1-2, 6-7, 8-9.

has met its foreseeable harm burden. *See, e.g.*, *Energy Policy Advocates v. U.S. Dep't of State*, No. 1:19-cv-03307 (TNM), 2023 WL 4198200, at *7 (D.D.C. June 27, 2023) ("Releasing attorney-client communications would undoubtably undermine our legal culture because agencies would lose an important tool in their decisionmaking process— employees' ability to confidentially consult agency lawyers. The law therefore already acknowledges and guards against the risk of harm that would come from disclosing attorney-client communications.") (internal citations and quotations omitted); *Am. First Legal Found. v. U.S. Dep't of Agric.*, No. 22-3029 (BAH), 2023 WL 4581313, at *8 (D.D.C. July 18, 2023) ("When invoking the attorney-client privilege, then, an agency likely does not need to reach far beyond the fact of disclosure to show foreseeable harm.").

### 8. The SEC properly withheld information under Exemption 6.

The FOIA prevents disclosure of "personnel files and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). To withhold information under Exemption 6, an agency must first establish that the information is contained in personnel, medical, or "similar" files. *See Reliant*, 520 F. Supp. 2d at 207. If the information meets that threshold, a court assesses whether disclosure would lead to a "clearly unwarranted invasion of personal privacy." *See id*. Specifically, "the court must undertake a balancing of the public interest in disclosure on the one side and the individual's interest in privacy on the other." *Id.* (internal quotations omitted); *see also Calle v. FBI*, No. 3:10-CV-2362-M, 2011 WL 3820577, at *5 (N.D. Tex. Aug. 5, 2011) (Exemption 6 intended to protect "all private or

personal information contained in other files, which if disclosed to the public, would amount to a clearly unwarranted invasion of the privacy of any person") (internal quotations and emphasis omitted), *report and recommendation adopted*, 2011 WL 3837031 (N.D. Tex. Aug. 26, 2011).

The records at issue here are in "similar files." "The Supreme Court has held that Congress intended the words 'similar files' to be interpreted broadly." *Reliant*, 520 F. Supp. 2d at 207. Exemption 6 is not limited to personnel or medical files; it covers any "'detailed Government records on an individual which can be identified as applying to that individual.'" *Gov't Accountability Project*, 699 F. Supp. 2d at 105 (quoting *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982)). Exemption 6 also covers not just the files themselves, but also "bits of personal information, such as names and addresses." *Telematch, Inc. v. U.S. Dep't Agric.*, 45 F.4th 343, 351 (D.C. Cir. 2022) (internal quotations omitted); *Calle*, 2011 WL 3820577, at *6 (Exemption 6 protected "identity, location, telephone numbers, and email addresses of third parties"). Details about staff's personal lives, staff and contractor contact information, and the names and titles of SEC staff whose actions resulted in the control deficiency, who were involved in immediate remedial efforts, who had access to the databases at issue in the control deficiency, or who were interviewed by the internal review team are deemed to be in "similar files." *See* Exs. A-G; SMF ¶43.

Individuals have a privacy interest in this information. Courts protect employee names and contact information under Exemption 6.[6] *See, e.g., Davidson v. U.S. Dep't of State*, 264 F. Supp. 3d 97, 115 (D.D.C. 2017) (Exemption 6 covers personal information "the release of which would create a palpable threat to privacy") (internal quotation omitted), *aff'd*, 728 F. App'x 7 (D.C. Cir. 2018). The privacy interest in names and contact information is substantial because individuals have a privacy interest in information that could lead to them being harassed if released. *See, e.g., id.* at 110, 115 (concluding individuals have substantial privacy interest in their names and contact information where the agency withheld the information to avoid "unwanted attention for the employee"); *Nova Oculus Partners, LLC v. SEC*, 486 F. Supp. 3d 280, 290 (D.D.C. 2020) (SEC appropriately withheld under Exemption 6 identifying information about SEC staff). The only names withheld are of SEC staff whose actions resulted in the control deficiency, who were involved in immediate remedial efforts, who had access to the databases at issue in the control deficiency, or who were interviewed during the review. SMF ¶43. The potential for harassment of these individuals is significant because people outside the SEC may want to question or attack individuals they think may have acted improperly. *See Horvath v. U.S. Secret Serv.*, 419 F. Supp. 3d 40, 47 (D.D.C. 2019) ("agents interviewed in the investigation have a substantial privacy interest in withholding information that would associate them with internal agency investigations and threatens to identify them as witnesses to alleged workplace

---

[6] The SEC understands that Plaintiff contests the withholding of contact information only for SEC "employees who are not lower-level" and contractors.

misconduct") (cleaned up); *Cotton v. Adams*, 798 F. Supp. 22, 26 (D.D.C. 1992)

("individuals named as witnesses or as subjects of an investigation . . . have a discernible

privacy interest in . . . avoiding the embarrassment and potential harassment that may

result from public disclosure of their association with the Inspector General's inquiry")

(internal citation omitted); *Berk v. Exec. Office of United States Attys.*, No. 3:18-CV-

1349-M-BK, 2021 WL 1877068, at *7 (N.D. Tex. Feb. 2, 2021) ("names and other

identifying information of [Secret Service] agents and third-party law enforcement

personnel" appropriately withheld because "the information did not reveal anything of

public interest" and "disclosure could result in harassment of the personnel involved"),

*report and recommendation adopted*, 2021 WL 1866548 (N.D. Tex. May 10, 2021.

Courts also protect details about staff's personal lives because "[f]ederal civilian

employees [ ] have a protectible interest in purely personal details that do not shed light

on agency functions." *Smith v. Dep't of Labor*, 798 F. Supp. 2d 274, 284 (D.D.C. 2011);

*see also, e.g.*, *Hunton & Williams LLP v. U.S. EPA*, 346 F. Supp. 3d 61, 86 (D.D.C. Sept.

27, 2018) (Exemption 6 protected information about agency employee's health and "the

number of hours two employees intended to take for vacation").

No public interest outweighs the privacy interests in the names, contact

information, and personal life details that the SEC withheld.  To overcome a privacy

interest, it is the requester's obligation to articulate a sufficient and significant public

interest.  *See Reliant*, 520 F. Supp. 2d at 207 ("If the requesting party cannot demonstrate

a public interest in disclosure then the court will not order disclosure, because, as this

Circuit has noted, 'something, even a modest privacy interest, outweighs nothing every

time.'"). Under the FOIA, the only relevant public interest is whether disclosing the personal information would shed light on governmental activities or operations. *See Davidson*, 264 F. Supp. 3d at 115-16. "Information that reveals little or nothing about an agency's own conduct does not further the statutory purpose[.]" *Id.* (internal quotations omitted). Releasing details about staff's personal lives, staff contact information, SEC Webex meeting dial-in information, and the names of people whose actions resulted in the control deficiency, who were involved in immediate remedial efforts, who had access to the databases at issue in the control deficiency, or who were interviewed by the internal review team would not shed light on the SEC's activities or operations. SMF ¶44.

Finally, SEC staff have segregated all non-exempt information from exempt information (SMF ¶47), and further consideration of foreseeable harm is not necessary because harm considerations are part of the balancing process under Exemption 6. *See, e.g.*, *Ball v. U.S. Marshals Serv.*, No. 19-1230 (JEB), 2021 WL 4860590, at *9 (D.D.C. Oct. 19, 2021) (stating that "the inquiry [about foreseeable harm] may vary with context as 'the agency's burden to demonstrate that harm would result from disclosure may shift depending on the nature of the interests protected by the specific exemption with respect to which a claim of foreseeable harm is made'" and concluding that "justifications for non-disclosure generally are also sufficient evidence of foreseeable harm," at least, for example, Exemption 7(C)); *Amiri*, 2021 WL 4438910, at *13 (noting that, in the context of Exemption 6, "a court may find the foreseeable-harm requirement satisfied if the very context and purpose of the withheld material make[s] the foreseeability of harm

42

manifest" and concluding information properly withheld because disclosure would "anger" and "expose to ridicule" certain individuals) (internal quotations omitted).  The SEC properly withheld names, contact information, details about personal lives, and Webex meeting information under Exemption 6 to protect the privacy interests of the agency, its employees, and its contractor's employees.

> ### 9.   The SEC appropriately withheld information under Exemption 7(E).

Exemption 7(E) exempts from disclosure "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  "Exemption 7(E) sets a relatively low bar for the agency to justify withholding; [r]ather than requiring a highly specific burden of showing how the law will be circumvented, this exemption only requires that the agency demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Longas-Palacio*, 2023 WL 2277128, at *5 (internal quotations omitted).  "[I]nternal agency materials relating to guidelines, techniques, sources, and procedures for law enforcement investigations and prosecutions, even when the materials have not been compiled in the course of a specific investigation may be protected under this exemption, even if those documents are not how-to manuals for law breakers." *Id.* (internal quotations omitted).

Here, the withheld information involves a law enforcement purpose because it consists of details about certain of the SEC's internal websites and OIT electronic folders, platforms, systems, and programs used in connection with SEC law enforcement efforts. *See* SMF ¶45. Disclosure of this information would expose non-public details about what platforms, systems, and programs the SEC uses to enforce federal securities laws. SMF ¶46. With this kind of information, members of the public, including subjects of SEC investigations or actions, could exploit the SEC's information technology systems to gain unauthorized access to view and manipulate data or otherwise interfere with those systems and thereby circumvent the law. *Id.* As such, the SEC appropriately withheld that information. *See, e.g.*, *Bradley*, 2019 WL 4980459, at *7 (Exemption 7(E) applied where agency stated that disclosure of information "would increase the risk of identity theft and that disclosure of any of the other information withheld under FOIA Exemption 7(E) would risk circumvention of revenue laws"); *Longas-Palacio*, 2023 WL 2277128, at *6 (protecting "queries, codes, system checks, searches and search results of various government databases"); *Driggers v. United States*, No. 3:11-CV-0229-N, 2011 WL 5525337, at *8 (N.D. Tex. Oct. 26, 2011) (Exemption 7(E) protected "[a]ny website information on" agency record because it is "internal to" agency "and would disclose information that might significantly risk circumvention of law"), *findings and recommendation adopted*, 2011 WL 5529801 (N.D. Tex. Nov. 14, 2011).

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, the SEC respectfully requests that the Court grant the SEC's motion for summary judgment.

Dated:  December 1, 2023     Respectfully submitted,

             /s/ *Alexandra Verdi*
             Alexandra Verdi
             NY Reg. No. 5480934
             S.D. Tex. No. 3821611
             Office of the General Counsel
             U.S. Securities and Exchange Commission
             100 F Street, NE
             Washington, D.C. 20549
             Telephone: (202) 551-5057
             Fax: (202) 772-9263
             verdim@sec.gov

             *Counsel for Defendant*
             *U.S. Securities and Exchange Commission*