## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

GEORGE R. JARKESY, JR.,

        Plaintiff,

    v.

SECURITIES AND EXCHANGE
COMMISSION,

        Defendant.

No.: 3:22-cv-00405

## **REPLY MEMORANDUM IN SUPPORT OF**
## **SEC'S MOTION FOR SUMMARY JUDGMENT**

## **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ..................................................................................................... 1

    A.   The SEC correctly determined that FOIA Request Subpart 1 is an improper FOIA request. ............................................................................................ 1

    B.   The SEC appropriately responded to FOIA Request Subpart 3 ................... 3

    C.   The SEC performed adequate searches for records responsive to FOIA Request Subparts 6, 11, 12(b), and 12(c). ...................................................... 4

    D.   The SEC properly withheld information under FOIA Exemptions 4, 5, 6, and 7(E) in responding to Subparts 2, 4, 5, 7, 8, 9, and 12(a)....................... 8

        1.   Communications between SEC staff and BRG, General Dynamics, Integrated Systems Inc., and Maximus + Attain contractors are intra-agency communications under Exemption 5. ................................... 9

        2.   The SEC properly withheld information under the attorney work-product doctrine................................................................................. 12

        3.   The SEC properly withheld information under the deliberative process privilege............................................................................... 13

        4.   The SEC has not waived protection of the withheld information.... 17

        5.   The SEC properly withheld information under Exemption 6. ......... 19

        6.   The SEC's *Vaughn* Indices sufficiently describe withheld information. .................................................................................... 22

        7.   The SEC sufficiently demonstrated the foreseeable harm that would occur should the withheld records be released................................ 24

    E.   No material facts are in dispute................................................................... 27

    CONCLUSION ...................................................................................................... 28

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Assassination Archives & Rsch. Ctr., Inc. v. CIA*,

   720 F. Supp. 217 (D.D.C. 1989) ................................................................... 2

*Assassination Archives & Rsch. Ctr. v. CIA*, 334 F.3d 55 (D.C. Cir. 2003) ..................... 18

*Brophy v. Dep't of Defense*, No. 05-360 (RMC),

   2006 WL 571901 (D.D.C. Mar. 8, 2006) ........................................................ 8

*Brown v. FBI*, 873 F. Supp. 2d 388 (D.D.C. 2012)............................................................ 20

*Carr v. C.R. Bard, Inc.*, 297 F.R.D. 328 (N.D. Ohio 2014) ............................................. 18

*Chelmowski v. United States*, No. 17-1394 (JEB),

   2021 WL 3077919 (D.D.C. July 21, 2021) .................................................... 7

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice*,

   45 F.4th 963 (D.C. Cir. 2022) ...................................................................... 16

*Clemente v. FBI*, No. 1:20-cv-1527 (TNM),

   2022 WL 17092585 (D.D.C. Nov. 21, 2022) ................................................. 25

*Coastal Corp. v. Dep't of Energy*, 496 F. Supp. 57 (D. Del. 1980) .................................. 22

*Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1 (2001) ............... 9

*Ecological Rights Found. v. U.S. EPA*, 541 F. Supp. 3d 34 (D.D.C. 2021) ..................... 27

*EEOC v. Lutheran Soc. Servs.*, 186 F.3d 959 (D.C. Cir. 1999) ........................................ 13

*Elec. Frontier Found. v. U.S. Dep't of Justice*, 826 F. Supp. 2d 157 (D.D.C. 2011) ....... 17

*Elkem Metals Co. v. United States*, 24 Ct. Int'l Trade 1395 (2000).................................. 24

*Emuwa v. U.S. Dep't of Homeland Sec.*, No. 1:20-cv-01756, 2022 WL 1451430 (D.D.C. May 9, 2022) ...................................................................................................... 7

*Energy Pol'y Advocates v. U.S. Dep't of State*, No. 1:19-cv-03307 (TNM), 2023 WL 4198200 (D.D.C. June 27, 2023) ................................................................... 26

*Ethyl Corp. v. U.S. EPA*, 25 F.3d 1241 (4th Cir. 1994) ................................... 16

*Fidelis Diagnostics, Inc. v. Safeguard Servs., LLC*, No. 4:10-CV-00638, 2012 WL 3043066 (E.D. Tex. June 28, 2012) ............................................................... 21

*FPL Group, Inc. v. IRS*, 698 F. Supp. 2d 66 (D.D.C. 2010) ............................ 17

*Free Enter. Fund v. PCAOB*, 561 U.S. 477 (2010) ......................................... 16

*Freedom Watch, Inc. v. Mueller*, 453 F. Supp. 3d 139 (D.D.C. 2020) .............. 7

*Georgia v. U.S. Dep't of Justice*, No. 1:21-cv-03138 (TNM), 2023 WL 2116375 (D.D.C. Feb. 20, 2023) ................................................................................. 10

*Hainey v. U.S. Dep't of Interior*, 925 F. Supp. 2d 34 (D.D.C. 2013) ............... 27

*Hall & Assocs. v. U.S. EPA*, 633 F. Supp. 3d 35 (D.D.C. 2022) ..................... 24

*Hall & Assocs. v. U.S. EPA*, No. 19-1095 (RC), 2020 WL 4673411 (D.D.C. Aug. 12, 2020) ......................................................................................................... 19

*Hennessey v. U.S. Agency for Int'l Dev.*, No. 97-1133, 1997 WL 537998 (4th Cir. 1997) ............................................................ 16

*ICM Registry, LLC v. U.S. Dep't of Commerce*, No. 06-0949 (JR), 2007 WL 1020748 (D.D.C. March 29, 2007) ............................................................... 16

*Jobe v. NTSB*, 1 F.4th 396 (5th Cir. 2021) ...................................................... 9

*Johnson v. United States*, 239 F. Supp. 3d 38 (D.D.C. 2017) ......................... 6

iii

*Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19 (D.D.C. 2000) .............. 3

*Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252 (D.D.C. 2004) ............... 17

*Kleinert v. BLM*, 132 F. Supp. 3d 79 (D.D.C. 2015)......................................... 20

*Lawyers' Comm. for C.R. v. OMB*, No. 18-645 (EGS), 2023 WL 3433978 (D.D.C. May
    12, 2023) ..........................................................................24, 25, 26

*Leadership Conf. on C.R. v. Gonzales*, 404 F. Supp. 2d 246 (D.D.C. 2005)................... 20

*Leopold v. DOJ*, 301 F. Supp. 3d 13 (D.D.C. 2018) .......................................... 1

*Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364 (D.C. Cir. 2020) .................. 15, 25

*Matthews v. Exec. Office for the United States Attys.*, No. 1:20-CV-370-RP-SH, 2021 WL
    2910634 (W.D. Tex. May 10, 2021)............................................................5, 8

*McKinley v. Bd. of Governors of the Fed. Reserve Sys.*,
    647 F.3d 331 (D.C. Cir. 2011) ..................................................... 10

*Mingo v. U.S. DOJ*, 793 F. Supp. 2d 447 (D.D.C. 2011)...................................... 8

*Morgan v. FBI*, No. A-15-CA-1255-SS,
    2016 WL 7443397 (W.D. Tex. May 23, 2016) ........................................ 5

*Nat'l Student Legal Def. Network v. U.S. Dep't of Educ.*, No. 21-1923 (BAH), 2023 WL
    4450579 (D.D.C. July 11, 2023).................................................... 18

*Negley v. FBI*, No. 5:12-CA-00362-OLG,
    2013 WL 12099972 (W.D. Tex. July 31, 2013) ........................................ 9

*Nurse v. Sec'y of the Air Force*, 231 F. Supp. 2d 323 (D.D.C. 2002)................................ 3

*People for the Am. Way Found. v. U.S. Dep't of Educ.*,
    516 F. Supp. 2d 28 (D.D.C. 2007).................................................. 22

iv

*Prechtel v. FCC*, 330 F. Supp. 3d 320 (D.D.C. 2018) ...................................................... 20

*Project on Gov't Oversight, Inc. v. DHS*, 657 F. Supp. 3d 50 (D.D.C. 2023) .................. 26

*Reliant Energy Power Generation, Inc. v. FERC*,

    520 F. Supp. 2d 194 (D.D.C. 2007) ......................................................................... 21, 25

*Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350 (D.C. Cir. 2021) .......... 26

*Rutila v. U.S. DOT*, No. 3:16-CV-2911-B,

    2022 WL 2359640 (N.D. Tex. June 30, 2022) ............................................................... 1

*Shermco Industries, Inc. v. Secretary of Air Force*, 613 F.2d 1314 (5th Cir. 1980) ......... 18

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777 (2021) ............................ 16

*United States v. Deloitte LLP*, 610 F.3d 129 (D.C. Cir. 2010) ......................................... 13

*Vaughn v. Rosen*, 523 F.2d 1136 (D.C. Cir. 1975) ........................................................... 16

*Waterman v. IRS*, 288 F. Supp. 3d 206 (D.D.C. 2018) ..................................................... 20

*Wilderness Soc. v. Dep't of Interior*, 344 F. Supp. 2d 1 (D.D.C. 2004) ........................... 17

**OTHER AUTHORITIES**

*Second Commission Statement Relating to Certain Administrative Adjudications*, U.S.

    Securities and Exchange Commission (June 2, 2023),

    https://www.sec.gov/news/statement/second-commission-statement-

    relatingcertainadministrative-adjudications ...................................................... 10, 14, 15

## I.     <u>INTRODUCTION</u>

Defendant U.S. Securities and Exchange Commission ("SEC") submits this reply in further support of its Motion for Summary Judgment, ECF 24 ("Memo").  Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, ECF 25 ("Opp."), relies largely on cases that do not support his positions and in many cases fails to address the law and facts the SEC presented to support its motion for summary judgment.

## II.     <u>ARGUMENT</u>

### A.  **The SEC correctly determined that FOIA Request Subpart 1 is an improper FOIA request.**

Plaintiff fails to meaningfully address the SEC's arguments that FOIA Request Subpart 1 is vague and overly broad.  *See* Opp. at 11-12.  Subpart 1 seeks "all documentation and correspondence" regarding the "actions, inactions and circumstances that constitute the 'control deficiency.'"  ECF 24-1 at ¶1.  Plaintiff insists that he "reasonably described" Subpart 1 (Opp. at 11), but provides no explanation for how the SEC could have ascertained what an "action," "inaction," or "circumstance[] that constitute[s] the 'control deficiency'" would be.  *See Rutila v. U.S. DOT*, No. 3:16-CV-2911-B, 2022 WL 2359640, at *5 (N.D. Tex. June 30, 2022) ("A request reasonably describes records if the agency is able to determine precisely what records are being requested.") (internal quotations omitted), *aff'd*, 72 F.4th 692 (5th Cir. 2023); *Leopold v. DOJ*, 301 F. Supp. 3d 13, 23 (D.D.C. 2018) ("The linchpin inquiry is whether the agency is able to determine precisely what records are being requested with the responsibility

1

firmly on the requester to frame requests with sufficient particularity to ensure that searches are not unreasonably burdensome.") (internal citation and quotations omitted).

Plaintiff also fails to recognize that Subpart 1 appears to seek all records about the control deficiency with no limitations on dates, context, or custodians.  *See* Memo at 12. Plaintiff's efforts to distinguish the present case from the cases the SEC cited in its Memo are unsuccessful given that Plaintiff's descriptions of Subpart 1 do not accurately describe the original request for all records about the control deficiency.  *See* Opp. at 12 (subpart "references a specific set of events that formed the basis of a report authored by the SEC or its consultants and about which the SEC has issued press releases and testified to Congress"); *see id.* (subpart seeks records "reflecting the 'activities' . . . [that] later formed the basis for the SEC's report of its own internal investigation of itself"). Plaintiff also now claims that he seeks "a specific subset of records which the SEC reviewed in preparing an SEC report of agency malfeasance" (Opp. at 13), but he provided no such limitation in the FOIA request, and he still does not identify which "specific subset" he seeks.  Contrary to Plaintiff's protestations, the SEC's cited cases support the SEC's conclusion that requests like Subpart 1 that seek all records about a subject are so broad as to lack specificity.  *See* Memo at 12.

Plaintiff further argues that the SEC failed to conduct an adequate search for records responsive to Subpart 1.  *See* Opp. at 13-15.  The SEC, however, is not required to conduct a search when a FOIA request is improper.  *Assassination Archives & Rsch. Ctr., Inc. v. CIA*, 720 F. Supp. 217, 219 (D.D.C. 1989) ("it is the requester's responsibility to frame requests with sufficient particularity to ensure that searches are

not unreasonably burdensome, and to enable the searching agency to determine precisely what records are being requested"); *Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 27-28 (D.D.C. 2000) (agency not required to search for records responsive to "unreasonably broad" request); *see also Nurse v. Sec'y of the Air Force*, 231 F. Supp. 2d 323, 329 (D.D.C. 2002) ("'FOIA was not intended to reduce government agencies to full-time investigators on behalf of requestors'"). Plaintiff's cited caselaw (Opp. at 13-15) does not support his position that the SEC must search for records responsive to an improper FOIA request; none of those cases indicate that an agency should conduct a search when a FOIA request is improper.

### B.  The SEC appropriately responded to FOIA Request Subpart 3.

In its motion for summary judgment, the SEC described the agreement the parties reached during mediation in August 2023 regarding Subpart 3 and addressed the issue that Plaintiff's counsel said should be addressed.  *See* Memo at 12-14.  Plaintiff does not respond to the argument that the SEC has fully responded to Subpart 3 as modified other than to say there "were no side deals."  *See* Opp. at 18-19.  Plaintiff appears to believe the SEC agreed to respond to Subpart 3 as originally written.  *Id.*

Plaintiff points to ECF 19 and 20 in support of his claim (Opp. at 18), but the September 5, 2023 scheduling order (ECF 21), which is the final documentation of the process agreed to in mediation (and identical in substance to the proposed order at ECF 20), is consistent with the understanding provided by the SEC, not with Plaintiff's position.  With respect to Subpart 3, the parties agreed that the issue to resolve on summary judgment is "[w]hether the SEC has fully responded to subpart 3."  ECF 21 at

3.  That language is consistent with the issue the parties addressed on summary judgment in the New Civil Liberties Alliance ("NCLA") FOIA case (*see* ECF 18 at 21, *NCLA v. SEC*, No. 22-cv-03567-CJN (D.D.C.) (analogous reply section titled "The SEC appropriately responded to Plaintiff's Second Category.")).  Briefing "[w]hether the SEC has fully responded to subpart 3" is not consistent with briefing whether the documents that would be responsive to the request as written are properly withheld as privileged.  Indeed, the scheduling order provides no information about the number of potentially responsive documents to Subpart 3 or about logging or selecting exemplar documents as it does with the other subparts where the SEC is withholding information as exempt.  *See* ECF 21 at 3 (delineating the seven subparts for which the SEC agreed to provide logs).  The Declaration of Melinda Hardy provides further information about the basis for the SEC's understanding of the narrowed scope of Subpart 3.  Hardy Decl. at ¶¶5-6.

Because the SEC has responded to Subpart 3 as narrowed and Plaintiff has not argued that the SEC has any further obligations under the narrowed request, summary judgment for the SEC is appropriate.

### C.  The SEC performed adequate searches for records responsive to FOIA Request Subparts 6, 11, 12(b), and 12(c).

Plaintiff argues that the SEC's searches for records responsive to FOIA Request Subparts 6, 11, and 12(b)[1] were insufficient primarily by contesting the adequacy of the SEC's Declaration of Mark Tallarico.  Opp. at 16-17.  Citing no case law to support his

---

[1] Plaintiff does not meaningfully address or otherwise contest the SEC's search for Subpart 12(c).  *See* Opp. at 16-17.

arguments, Plaintiff claims the SEC must "exclude[] the possibility that additional records existed in other repositories." Opp. at 16. That standard is not correct. "'The question is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was *adequate*.'" *Morgan v. FBI*, No. A-15-CA-1255-SS, 2016 WL 7443397, at *2 (W.D. Tex. May 23, 2016) (emphasis in original). The adequacy of the SEC's search "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of [the] case." *Id.* The SEC's declaration describes the searches SEC staff made for these subparts. These subparts seek records concerning the SEC's internal review of the control deficiency (ECF 24-3 at ¶4), and "OGC staff consulted with the SEC staff handling the internal review of the control deficiency because this group of individuals was most familiar with the subject matter of the request and was most likely to know whether and where responsive records would exist" (ECF 24-5 at ¶11). With respect to Subpart 11, which seeks records concerning the "involvement of the Commission's Office of Inspector General" (ECF 24-1 at ¶1), OGC staff also "consulted with OIG staff about the existence of responsive records to subpart 11" (ECF 24-5 at ¶13).

Plaintiff fails to rebut the evidence of the adequacy of the SEC's searches. *See Matthews v. Exec. Office for the United States Attys.*, No. 1:20-CV-370-RP-SH, 2021 WL 2910634, at *6 (W.D. Tex. May 10, 2021) ("Once the agency provides evidence that an adequate search was conducted, the burden shifts to the requestor to rebut the evidence by showing that the agency acted in bad faith or presenting evidence to create a genuine dispute as to the adequacy of the search."), *report and recommendation adopted*, 2021

WL 4163999 (W.D. Tex. July 7, 2021). Plaintiff makes much of the SEC's explanations of its searches "at that time." Opp. at 17. Plaintiff appears to recognize that a FOIA request cannot seek documents created after the time of the search (*see Johnson v. United States*, 239 F. Supp. 3d 38, 44 (D.D.C. 2017) (agency "did not violate the FOIA by failing to disclose a record it did not have in its possession when it received Plaintiff's [ ] FOIA request" and "'[t]he FOIA does not require an agency to update or supplement a prior response to a request for records'"), *aff'd*, 2017 U.S. App. LEXIS 19797 (D.C. Cir. 2017)), and does not contend that the searches for Subparts 6 and 12(b) would be unreasonable if they occurred in 2022 (Opp. at 16-17). Instead, Plaintiff asserts that "no searches were conducted until comparatively recently, long after this litigation began and even after Mr. Jarkesy filed his first motion for summary judgment." Opp. at 17. Plaintiff ignores that the SEC responded to Subparts 6, 11, 12(b), and 12(c) in its January 20, 2023 interim partial response. ECF 24-1 at ¶9. As such, the searches occurred prior to January 20, 2023. Plaintiff provides no reason to believe that prior to January 20, 2023, the SEC had made final determinations about "the effects of the control deficiency on administrative proceedings that were not discussed in the SEC's April 5, 2022 statement" (sought in Subpart 6) (ECF 24-1 at ¶¶1, 5) or about the "pending report" (sought in Subpart 12(b)) (ECF 24-1 at ¶1).

With respect to Subpart 11, Plaintiff complains that the "SEC does not explain that a search was conducted, where the search was conducted, by what methodology the search was calculated to locate records, or indeed that the search produced a negative result." Opp. at 17. These assertions are false. Subpart 11 seeks records about OIG's

involvement in the "Commission's discovery, investigation, and remedy of the control deficiency." *See* ECF 24-1 at ¶1. The Tallarico Declaration explains that, to search for records responsive to Subpart 11, "OGC staff consulted with the SEC staff handling the internal review of the control deficiency" who stated that they did not have responsive records because OIG was not involved in the discovery, internal review, or remedy of the control deficiency. *See* ECF 24-5 at ¶13. The Tallarico Declaration further explains that "OGC staff also consulted with OIG staff about the existence of responsive records," and "OIG staff's search did not identify any responsive records." *See id.* The Declaration of Katherine H. Reilly provides further information about the SEC's search for records responsive to Subpart 11. Reilly Decl. at ¶¶5-8. Plaintiff identifies no legal authority for his position (Opp. at 17) that the SEC must explain "[t]he reason that certain unnamed staff in a certain office 'did not identify' records" or that the SEC must name the staff involved in the searches. *See Chelmowski v. United States*, No. 17-1394 (JEB), 2021 WL 3077919, at *7 (D.D.C. July 21, 2021) ("'Courts . . . have repeatedly rejected the argument that an agency's [FOIA] declaration must identify the individuals, by name, who conducted the searches.'"); *Freedom Watch, Inc. v. Mueller*, 453 F. Supp. 3d 139, 149 (D.D.C. 2020) ("'FOIA does not require the disclosure of the names or information about agency staff involved in processing FOIA requests.'").

Plaintiff also notes that there are "multiple layers of hearsay" in the SEC's declaration (Opp. at 16-17), but courts allow agencies to supply declarations from employees responsible for supervising or coordinating search efforts. *See, e.g.*, *Emuwa v. U.S. Dep't of Homeland Sec.*, No. 1:20-cv-01756, 2022 WL 1451430, at *4 (D.D.C. May

9, 2022) ("'FOIA declarants may include statements in their declarations based on information they have obtained in the course of their official duties.'"); *Brophy v. Dep't of Defense*, No. 05-360 (RMC), 2006 WL 571901, at *4 (D.D.C. Mar. 8, 2006) ("Declarations that contain hearsay in recounting searches for documents are generally acceptable.").

Finally, Plaintiff posits that the "'failure to identify' responsive records was based on instructions of SEC management or based on the searchers' willful failures." Opp. at 17. Plaintiff provides no evidence for this claim and cannot satisfy his burden with mere speculation. *See Matthews*, 2021 WL 2910634, at *6 ("'A plaintiff cannot call into question the adequacy of the search by engaging in mere speculation that as yet uncovered documents may exist.'"); *Mingo v. U.S. DOJ*, 793 F. Supp. 2d 447, 452 (D.D.C. 2011) ("An agency's declarations are 'accorded a presumption of good faith, which cannot be rebutted by purely speculative claims . . . .'").

### D. The SEC properly withheld information under FOIA Exemptions 4, 5, 6, and 7(E) in responding to Subparts 2, 4, 5, 7, 8, 9, and 12(a).

Plaintiff contests the SEC's withholding of information under the attorney work-product doctrine and deliberative process privilege embedded in FOIA Exemption 5 and under Exemption 6. *See* Opp. at 20-34. He does not, however, address the SEC's withholding of information under FOIA Exemptions 4 and 7(E) or under the attorney-client privilege embedded in Exemption 5 and therefore concedes that those withholdings

were appropriate.[2]  *See, e.g.*, *Negley v. FBI*, No. 5:12-CA-00362-OLG, 2013 WL 12099972, at *2 (W.D. Tex. July 31, 2013) (granting summary judgment on applicability of exemptions where "Plaintiff did not challenge the exemptions in his response and concedes that they are appropriate in his sur-reply").  Plaintiff's objections are meritless.

### 1. Communications between SEC staff and BRG, General Dynamics, Integrated Systems Inc., and Maximus + Attain contractors are intra-agency communications under Exemption 5.

Plaintiff claims the SEC's communications with its contractors are not intra-agency communications.  *See* Opp. at 20-21, 26-29.  Plaintiff incorrectly argues that Supreme Court and Court of Appeals precedent applying the consultant corollary to government contractors is not well-established law (Opp. at 26-27), ignoring that the Fifth Circuit has approved the use of the consultant corollary.  *See, e.g.*, *Jobe v. NTSB*, 1 F.4th 396, 399, 404 (5th Cir. 2021) ("Several circuits, including ours, read Exemption 5 to protect communications not only among an agency's employees, but also with some non-agency experts whose input the agency has solicited.").

In *Klamath*, the Supreme Court recognized that certain Courts of Appeals had adopted a consultant corollary to Exemption 5 and found that communications between agencies and outside consultants hired by agencies were intra-agency communications as long as the consultant did not "represent an interest of its own, or the interest of any other client, when it advise[d] the agency that hire[d] it." *Dep't of Interior v. Klamath Water*

---

[2] Plaintiff makes certain conclusory objections to the paragraphs in the SEC's statement of material facts that concern Exemptions 4 and 7(E) and attorney-client privilege withholdings but makes no such arguments in his Opposition.

*Users Protective Ass'n*, 532 U.S. 1, 9-11 (2001); *see also McKinley v. Bd. of Governors of the Fed. Reserve Sys.*, 647 F.3d 331, 336 (D.C. Cir. 2011) ("intra-agency" includes "agency records containing comments solicited from nongovernmental parties").

Plaintiff points to one court's opinion in support of his request that the Court "decline to recognize this purported 'corollary' to Exemption 5." Opp. at 26-27. In that case, however, the Court did not reject the consultant corollary but rather applied "three [guiding] principles" to determine whether private parties and their lawyers were "consultants" under the consultant corollary. *Georgia v. U.S. Dep't of Justice*, No. 1:21-cv-03138 (TNM), 2023 WL 2116375, at *5 (D.D.C. Feb. 20, 2023). Specifically, the Court noted that, "following *Klamath*," to determine "whether a purported consultant [is] enough like the agency's own personnel to justify calling their communications intra-agency," courts should consider "whether the agency presented evidence that the private parties are sufficiently disinterested to be analogous to government consultants," whether "the agency solicited the communications" from the private party, and whether "the agency seeks [the private party's] expertise." *Id.* (internal quotations omitted).

Application of the principles used in *Georgia* shows that communications between the SEC and its contractors are intra-agency. First, "the SEC retained BRG to support its internal review relating to the control deficiency"[3] and retained General Dynamics,

---

[3] Plaintiff repeatedly states that BRG conducted the internal review (*see, e.g.*, Opp. at 5, 6, 7, 31), but BRG did not conduct the internal review. BRG supported SEC staff conducting the internal review. *See* ECF 24-2 at ¶5; *Second Commission Statement Relating to Certain Administrative Adjudications*, U.S. Securities and Exchange Commission (June 2, 2023), https://www.sec.gov/news/statement/second-commission-statement-relatingcertainadministrative-adjudications ("Second Statement").

Integrated Systems Inc., and Maximus + Attain "to support the SEC's Office of Information Technology ('OIT')."  ECF 24-1 at ¶¶33, 34.  None of these contractors has any "interest related to the SEC's control deficiency other than" providing assistance pursuant to contracts with the SEC.  *Id*.  Second, the SEC solicited and retained BRG, General Dynamics, Integrated Systems Inc., and Maximus + Attain to support the SEC's work.  ECF 24-1 ¶¶33, 34.  Third, the SEC sought the expertise of the contractors, specifically BRG's ability to conduct forensic analysis and the abilities of General Dynamics, Integrated Systems Inc., and Maximus + Attain to support OIT staff.  *See id*.[4]

Plaintiff argues that, even if the consultant corollary is based on law, it does not apply here because the SEC's Office of Inspector General should have conducted an investigation.  *See* Opp. at 2, 5, 8, 21, 26, 28-29; ECF 25-1 at ¶33.  It is not necessary to consider this argument because Plaintiff provides no support for his premise that the Office of Inspector General should have conducted the internal review.  Plaintiff does not identify any provision of the Inspector General Act, 5 U.S.C. § 401 *et seq.*, or any other law that would preclude the SEC's Office of the General Counsel from conducting the internal review here.  *See* Opp. at 5, 21, 26, 28; ECF 25-1 at ¶33.  Plaintiff also does not explain why an Inspector General's charge to investigate fraud, waste, and mismanagement would preclude the Office of the General Counsel from taking the steps it deemed necessary to address issues related to agency litigation.

---

[4] Plaintiff claims that the SEC is providing different information in this case than in the *NCLA* case.  *See* Opp. at 28.  The language that Plaintiff claims appears only in the *NCLA* case appears in the SEC's statement of material facts in this case.  *See* ECF 24-1 at ¶33.

### 2. The SEC properly withheld information under the attorney work-product doctrine.

Contrary to Plaintiff's incorrect statement that the SEC cites the attorney work-product doctrine in its *Vaughn* Indices "occasionally" (Opp. at 20-21), the SEC asserts that the attorney work-product doctrine protects all material withheld under Exemption 5 (*see* ECF 24-6–ECF 24-12 (work-product doctrine cited for all records)).

Plaintiff argues that the SEC has failed to establish that the attorney work-product doctrine applies to the withheld information because it was not "prepared or obtained because of the prospect of litigation." Opp. at 24-26 (internal quotations omitted). Plaintiff claims that the SEC would have conducted a review of the control deficiency even if it did not fear being sued. *Id.* at 26.

As a threshold matter, Plaintiff's own briefing shows the SEC had good reason to address the control deficiency issues in "anticipation of litigation involving SEC administrative proceedings tied to the control deficiency" (ECF 24-1 at ¶32) because Plaintiff confesses that Michelle Cochran would have raised the control deficiency issue in litigation. Opp. at 7, 31; ECF 25-1 at ¶35 (admitting "litigation was foreseeable"). Plaintiff's only argument is that the SEC would have taken the same steps it took in reviewing the control deficiency if it had not anticipated litigating issues related to the control deficiency. *See* Opp. at 25-26. Plaintiff points to no facts to support that position. *See id.* While the SEC may well have taken actions to address the control deficiency issue even if it did not need to prepare to address the issue in litigation, Plaintiff provides no reason to believe that the SEC would have undertaken the detailed

analysis of the impact of the control deficiency in specific cases if the SEC did not anticipate needing to address litigation relating to those issues.  *See id.*

Plaintiff's own cited cases show that the attorney work-product doctrine applies where records are generated to address both the prospect of litigation and matters arising in the ordinary course of business.  *See EEOC v. Lutheran Soc. Servs.*, 186 F.3d 959, 968-69 (D.C. Cir. 1999) (report covered by attorney work-product doctrine "because [respondent] feared litigation" and "even if [respondent undertook its investigation in ordinary course of business], [petitioner's] recharacterization of [respondent's] motivation does nothing to undermine [respondent's] contention that it genuinely feared litigation") (Opp. at 25); *United States v. Deloitte LLP*, 610 F.3d 129, 138 (D.C. Cir. 2010) ("document produced during an audit" could "contain protected work-product material even though it serves multiple purposes, so long as the protected material was prepared because of the prospect of litigation") (Opp. at 25).

### 3. The SEC properly withheld information under the deliberative process privilege.

In arguing that the SEC has not supported withholding documents under the deliberative process privilege, Plaintiff claims: (1) the SEC has not shown that it is protecting recommendations from subordinates to superiors; (2) the withheld information is not related to policy formulation; and (3) the SEC has not provided sufficient

information to support its privilege claim.  *See* Opp. at 22-24.[5]  Those claims are based on incorrect factual and legal bases.

First, Plaintiff insists incorrectly that the SEC did not identify "the 'recommenders' . . . inside or outside the agency."  Opp. at 22.  The SEC, however, identified most of the deliberating individuals by name and identified others as staff in particular SEC offices (including "Office of the Secretary," "Division of Enforcement support," "Office of Information Technology," and "BRO Review group" staff) or as "SEC staff" and "SEC contractors."  *See* ECF 24-6–ECF 24-12.

Second, Plaintiff suggests that issues relating to the control deficiency are not policy issues protected by the deliberative process privilege.  *See* Opp. at 22-23.  Contrary to Plaintiff's position that the records reflect "[m]ere reporting of forensic irregularities" (Opp. at 22), the internal review did not involve simply gathering facts.  Rather, the SEC instituted a "comprehensive" review that included consultative discussions and analysis.  *See* ECF 24-1 ¶¶31, 33; Second Statement, *supra*.  As described in the motion for summary judgment, the SEC engaged in many policy decisions leading up to and during its internal review including possible courses of action, the scope and focus of the internal review, and providing information to the public about the control deficiency.  *See* Memo at 30-32.  The SEC also used the review to make policy decisions about whether to continue to litigate administrative proceedings affected

---

[5] Plaintiff briefly argues that the SEC "inherently has hidden factual and nondeliberative material from view" (Opp. at 20) but provides no support for that position (*see* Memo at 32-33 (factual material "inextricably intertwined" in deliberations)).

by the control deficiency.  *See* Second Statement, *supra*.  As a result, the information the

SEC withheld is also related to policy issues about handling ongoing and possible future

litigation regarding administrative proceedings affected by the control deficiency.  Cases

cited in the SEC's motion for summary judgment show that courts have approved

agencies' withholding of this type of information.  *See* Memo at 31-34.

Third, the *Vaughn* Indices provide ample information to support the SEC's

determination that the withheld documents are predecisional and deliberative.  The

*Vaughn* Indices describe several specific matters about which SEC staff were

deliberating.  First, SEC staff debated and analyzed possible courses of action and

remedial steps to take after the discovery of the control deficiency.  *See* ECF 24-6, ECF

24-7, ECF 24-8, ECF 24-9.  Second, SEC staff also discussed retaining BRG, the scope

of its work, and its role in the internal review.  *See* ECF at 24-10.  Third, SEC staff

discussed with staff and contractors what forensic data could and should be compiled to

assess the scope and potential impact of the SEC's control deficiency, which reflects

deliberations of SEC staff about what to focus on and how to conduct the internal review.

*See* ECF 24-8, ECF 24-9, ECF 24-11. Further, SEC staff and contractors discussed,

analyzed, and edited draft language and documents relating to the control deficiency.  *See*

ECF 24-6, ECF 24-9, ECF 24-10, ECF 24-11, ECF 24-12.

In arguing that the SEC has not sufficiently supported its withholdings under the

deliberative process privilege, Plaintiff relies on cases that are inapposite or support the

granting of summary judgment to the agency.  *Machado Amadis v. U.S. Dep't of State*,

971 F.3d 364, 370 (D.C. Cir. 2020) (granting summary judgment to agency and finding

Exemption 5 applied to "'evaluations, recommendations, discussions, and analysis which are prepared for senior-level review and decisionmaking'") (Opp. at 22); *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 483-84 (2010) (addressing presidential "ability to remove a principal officer," not any issues under FOIA) (Opp. at 22); *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice*, 45 F.4th 963, 977, 979 (D.C. Cir. 2022) (emphasizing "unique circumstances of" case in which agency "[sought] to rely on a new legal theory justifying [Exemption 5] withholding" that it "never presented to the district court") (Opp. at 22, 23, 24); *Ethyl Corp. v. U.S. EPA*, 25 F.3d 1241, 1244, 1250 (4th Cir. 1994) (agency withheld contested records in full and did not identify authors or recipients of records and did not identify their "relationships to the decisionmaking process") (Opp. at 23); *Vaughn v. Rosen*, 523 F.2d 1136, 1145 (D.C. Cir. 1975) (reports at issue were "'final objective analyses of agency performance under existing policy'") (Opp. at 23); *Hennessey v. U.S. Agency for Int'l Dev.*, No. 97-1133, 1997 WL 537998, at *5 (4th Cir. 1997) (report at issue was "final," "seemingly entirely factual in character," and "prepared with the expectation that it would be shared with the very party from whom the government now attempts to withhold the document") (Opp. at 23); *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 788 (2021) (concluding that "deliberative process privilege protects the [agency's] draft biological opinions from disclosure because they are both predecisional and deliberative") (Opp. at 23); *ICM Registry, LLC v. U.S. Dep't of Commerce*, No. 06-0949 (JR), 2007 WL 1020748, at *6 (D.D.C. March 29, 2007) (deliberative process privilege did not apply where "government's submissions fail to specify the deliberative process reflected in these documents") (Opp. at 24);

*Wilderness Soc. v. Dep't of Interior*, 344 F. Supp. 2d 1, 12-13 (D.D.C. 2004) (agency's "own definition of 'wilderness issues' [did] not specify one agency decision, but rather three (and possibl[y] more) different agency decisions") (Opp. at 24); *Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 264 (D.D.C. 2004) (agency did "not identify *specific* final decisions or decisionmaking processes to which the documents contributed") (Opp. at 24); *Elec. Frontier Found. v. U.S. Dep't of Justice*, 826 F. Supp. 2d 157, 168-69 (D.D.C. 2011) (descriptions "fail[ed] to identify a specific deliberative process to which the withheld email messages contributed" and role messages played) (Opp. at 24); *FPL Group, Inc. v. IRS*, 698 F. Supp. 2d 66, 90 (D.D.C. 2010) (agency "too vaguely described" certain records) (Opp. at 24).

### 4.  The SEC has not waived protection of the withheld information.

Plaintiff argues that the SEC "voluntarily waived the protection of Exemption 5 by sharing the underlying documents with its favored vendors and issuing press releases linking to selected records."  Opp. at 29-31.  Plaintiff, however, provides no evidence that the SEC shared the withheld records with anyone other than SEC staff and government contractors that come within the consultant corollary.

Plaintiff's argument that disclosure to vendors waived the deliberative process privilege primarily repackages his argument that correspondence between SEC staff and its contractors is not privileged.  Opp. at 29.  As discussed above, the consultant corollary applies here and protects communications between the SEC and its contractors.  *See supra* at II.D.1.  Plaintiff also states that the SEC "must list the 'names and affiliations of all senders and recipients'" and not simply describe documents as internal.  Opp. at 29.

The SEC's *Vaughn* Indices satisfy that requirement, and Plaintiff has not pointed to any entries that lack sufficient information.

Plaintiff's argument that the SEC waived work product protection by issuing a press release relies on the "doctrine of implied waiver" (Opp. at 30-31), but under the FOIA, "disclosure to a third party does not waive [work product protection] unless such disclosure, under the circumstances, is inconsistent with the maintenance of secrecy from the disclosing party's adversary, and waiver would occur . . . only if the disclosure substantially increases the possibility of an opposing party obtaining the information." *Nat'l Student Legal Def. Network v. U.S. Dep't of Educ.*, No. 21-1923 (BAH), 2023 WL 4450579, at *7 (D.D.C. July 11, 2023) (internal quotations omitted); *see also Shermco Industries, Inc. v. Secretary of Air Force*, 613 F.2d 1314, 1320 (5th Cir. 1980) ("Waiver occurs when an agency makes its information more broadcast than is allowed by its own regulations, but it does not occur when an agency whose action is being reviewed forwards to the reviewing agency legal memoranda in support of its position[.]") (internal citation omitted); *Assassination Archives & Rsch. Ctr. v. CIA*, 334 F.3d 55, 60-61 (D.C. Cir. 2003) (no waiver where plaintiff "made no *specific* showing that any of the . . . disclosures revealed information that is 'as specific as' and 'matches' that included in the [withheld material]") (emphasis in original).[6]  Because Plaintiff does

---

[6] Plaintiff quotes *Carr v. C.R. Bard, Inc.*, 297 F.R.D. 328 (N.D. Ohio 2014), to support application of the doctrine of implied waiver (Opp. at 30), but that case is not a FOIA case, no waiver was found there, and Plaintiff has not cited any case that addresses the doctrine of implied waiver in a FOIA case (Opp. at 29-31).

not, and cannot, point to any information in the press release that the SEC is seeking to protect, it has not shown that the SEC waived any protection provided by the FOIA.

### 5. The SEC properly withheld information under Exemption 6.

Plaintiff objects to the SEC's Exemption 6 withholdings of SEC staff and contractor contact information and certain SEC staff names. Opp. at 31-34.

First, Plaintiff incorrectly identifies which names the SEC withheld. *See* Opp. at 31-33. The SEC withheld the "names of SEC staff and contractors whose actions resulted in the control deficiency, who were involved in immediate remedial efforts, who had access to the databases at issue in the control deficiency, or who were interviewed by the internal review team." ECF 24-1 at ¶43. As reflected in the SEC's *Vaughn* Indices, the SEC did not withhold the names of the SEC staff and contractors who conducted the internal review. *Cf. id.* Individuals potentially involved in the control deficiency may be harassed, so they have a privacy interest in not having their names publicly released. *See* Memo at 40-41; Hardy Decl. at ¶7. As discussed further below, Plaintiff has not identified a public interest in knowing the names that would overcome that privacy interest.

Plaintiff also objects to the SEC's withholding of SEC staff and contractors' email addresses and phone numbers. Opp. at 33-34. Plaintiff ignores that courts often protect employee contact information under Exemption 6 because individuals have a privacy interest in information that could lead them to being harassed if released. *See* Memo at 40-41; *see also Hall & Assocs. v. U.S. EPA*, No. 19-1095 (RC), 2020 WL 4673411, at *5 (D.D.C. Aug. 12, 2020) ("Courts have also upheld the withholding of email addresses

used for work purposes where they are not publicly available."); *Waterman v. IRS*, 288 F. Supp. 3d 206, 211-12 (D.D.C. 2018) ("contact information for individual [agency] employees sheds little light on an agency's performance of its statutory duties, yet exposes individual employees to threatening or harassing contacts from the public") (internal citation and quotation omitted), *vacated on other grounds*, 755 F. App'x 26 (D.C. Cir. 2019), *remanded*, 2021 WL 4262722 (D.D.C. Sept. 20, 2021).

Plaintiff cites cases that are factually distinguishable from the present circumstances. *See Prechtel v. FCC*, 330 F. Supp. 3d 320, 329 (D.D.C. 2018) (ordering release of email addresses of individuals who "had ample indication that their email addresses could be made public, mitigating any expectation of privacy" and were warned that their names and addresses would be publicly available online and released) (Opp. at 33); *Kleinert v. BLM*, 132 F. Supp. 3d 79, 95-97 (D.D.C. 2015) (focusing on withholding of agency staff names because plaintiff "expressly disavowed" seeking email addresses and agency "wholly failed to explain why disclosure of the redacted [names] would subject the relevant individuals to . . . harms") (Opp. at 33); *Leadership Conf. on C.R. v. Gonzales*, 404 F. Supp. 2d 246, 257 (D.D.C. 2005) (agency had withheld names and contact information that were "already publicly available from the Office of Personnel Management") (Opp. at 34); *Brown v. FBI*, 873 F. Supp. 2d 388, 402-04 (D.D.C. 2012) (concluding that employee names and phone numbers were appropriately withheld under FOIA Exemption 7(C) because "*[a]ny* amount of privacy expectation outweighs the virtually nonexistent public interest") (Opp. at 34).

The SEC withheld the contact information of SEC staff and contractors, as well as the names and titles of SEC staff whose actions resulted in the control deficiency, who were involved in immediate remedial efforts, who had access to the databases at issue in the control deficiency, or who were interviewed by the internal review team, because there is a potential for harassment from individuals who may want to question or attack individuals they think may have acted improperly in connection with handling or accessing confidential information. *See* Memo at 40-42; Hardy Decl. at ¶7.

Plaintiff has failed to meet his burden to overcome the privacy interests in the names and contact information the SEC withheld. To overcome a privacy interest, it is the requester's obligation to articulate a sufficient public interest. *See Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 207 (D.D.C. 2007) ("'something, even a modest privacy interest, outweighs nothing every time'"), *report and recommendation adopted*, 520 F. Supp. 2d 194 (Nov. 8, 2007); *see also Fidelis Diagnostics, Inc. v. Safeguard Servs., LLC*, No. 4:10-CV-00638, 2012 WL 3043066, at *6 (E.D. Tex. June 28, 2012) ("The Supreme Court has narrowly defined the 'public interest' relevant to Exemption 6 balancing as the extent to which disclosure would serve the core purpose of the FOIA, which is contributing significantly to the public understanding of the operations or activities of the government.") (cleaned up and internal quotations omitted), *report and recommendation adopted*, 2012 WL 3044268 (July 25, 2012). The only "public interest" that Plaintiff identifies in the withheld information is the identification of "who is influencing agency policy" (Opp. at 32-33), but, as shown through the *Vaughn* Indices and Plaintiff's own Exhibit B (*see* ECF 25-4)

the SEC released the names of SEC and contractors' staff who conducted the internal review. Rather than identifying a significant public interest in the information actually withheld, Plaintiff claims with no explanation or analysis that disclosure would be "mundane and unlikely to cause harm." Opp. at 33.[7]

Because SEC staff and contractors have a privacy interest in the withheld information, and Plaintiff did not articulate a sufficient and significant public interest to countervail that privacy interest, the SEC properly withheld certain names and contact information under Exemption 6.

### 6. The SEC's *Vaughn* Indices sufficiently describe withheld information.

Plaintiff objects to certain aspects of the SEC's *Vaughn* Indices but does not contend the descriptions regarding the withholdings under the attorney client-privilege or under the attorney work-product doctrine are insufficient. Plaintiff complains only that the *Vaughn* Indices and declarations do not provide details to support application of the deliberative process privilege. Opp. at 34-37. That claim is meritless.

The *Vaughn* Indices reflect that the parent emails and attachments address SEC staff discussions about specific subjects, including: discovery of and internal review

---

[7] Plaintiff's cited cases (Opp. at 33) do not support Plaintiff's proposition "that disclosing the 'names' of the parties to a communication (including all staffers) is required for a Vaughn Index" and for establishing privilege claims. *See Coastal Corp. v. Dep't of Energy*, 496 F. Supp. 57, 58-64 (D. Del. 1980) (addressing disputes concerning proposed order about elements to include in *Vaughn* index, which did not include discussion of whether specific staff names had to be included); *People for the Am. Way Found. v. U.S. Dep't of Educ.*, 516 F. Supp. 2d 28, 41-42 (D.D.C. 2007) (requiring agency to re-submit *Vaughn* index with names and affiliations of senders and recipients for segregability analysis because "*Vaughn* index did not include all parties to each communication").

relating to the control deficiency; possible courses of action and remedial steps; retaining BRG to support the internal review; data used to assess the scope and potential impact of the control deficiency; and draft language and documents concerning the control deficiency, as well as the drafts themselves. *See* ECF 24-6–ECF 24-12; Memo at 30-31. Within those categories, the Indices provide more granular detail. For example, the records address questions "about what further information should be gathered," "possible ways of gathering information about how certain databases were accessed," "preliminary analysis" about the deficiency, and "which SEC staff to interview." *See* ECF 24-6 at 2, 3, 8, 16; ECF 24-7 at 1, 7; ECF 24-8 at 3; ECF 24-9 at 3. Similarly, the records about draft language and documents specify what type of document is being drafted. *See* ECF 24-6 at 6, 10; ECF 24-8 at 1; ECF 24-10 at 1-2; ECF 24-11 at 23; ECF 24-12 at 1-5, 7-9, 11-13. Review of the *Vaughn* Indices will show that they provide sufficient information to show why the withheld information is deliberative and predecisional.

In addition, the McFadden and Tallarico declarations provide sworn evidence that the withheld information consists of deliberations that led to the SEC's findings about the control deficiency. *See* ECF 24-2 at ¶9 ("confidential discussions and the data generated from the discussions . . . formed the basis for advice conveyed to SEC officials who needed to decide what actions to take in light of the internal review"); ECF 24-5 at ¶27 (records "reflect SEC staff's consultative discussions before final agency decisions or findings had been made concerning the Commission's internal review relating to the control deficiency").

Providing additional detail about the records would expose SEC staff's work product and deliberations during the internal review. *See* ECF 24-2 at ¶¶8-12.  Plaintiff objects that the SEC's explanations are "repetitive" (Opp. at 35), but the withheld records all pertain to the same subject matter, so similar explanations are to be expected.  *See Hall & Assocs. v. U.S. EPA*, 633 F. Supp. 3d 35, 73 (D.D.C. 2022) (approving *Vaughn* indices where "many [] entries contain the same language . . . because many of the withheld documents are similar"); *Lawyers' Comm. for C.R. v. OMB*, No. 18-645 (EGS), 2023 WL 3433978, at *5 (D.D.C. May 12, 2023) ("a *Vaughn* index is not inadequate simply because an agency grouped similar documents into a single category and provided the same reason for withholding information across that category").

The cases Plaintiff cited are inapposite and distinguishable.  *See Elkem Metals Co. v. United States*, 24 Ct. Int'l Trade 1395, 1401-02 (2000) (ordering release of schedules because dates "were incorporated into the final published schedule[s]" and "disclosure would not reveal [agency] deliberations") (Opp. at 36); *see supra* at II.D.3 (discussing Plaintiff's cited cases at Opp. 36-37).

### 7.  The SEC sufficiently demonstrated the foreseeable harm that would occur should the withheld information be released.

Plaintiff argues that the SEC has offered only "general statements" about how the release of the withheld information would harm the SEC.  *See* Opp. at 37-41.  But the McFadden Declaration provides information about the harm that would arise if the SEC released the records.

First, the declaration states that disclosure of the information withheld under the attorney work-product doctrine "would deprive the SEC of its ability to withhold that information in future litigation, and consequently would deprive SEC attorneys of a zone of privacy within which to weigh facts and evidence and evaluate how to handle future litigation."  ECF 24-2 at ¶8.  Courts find foreseeable harm in these circumstances.  *See, e.g.*, *Clemente v. FBI*, No. 1:20-cv-1527 (TNM), 2022 WL 17092585, at *6 (D.D.C. Nov. 21, 2022) (court found "reasonably foreseeable harm" in releasing memoranda created in anticipation of litigation because it "would impede prosecutors' ability to properly prepare legal theories and would hinder their ability to effectively represent the United States in any [related] future litigation").  Plaintiff does not contest this harm.

Second, the declaration explains the chilling effect of disclosing deliberations in the specific context at issue here.  *See* ECF 24-2 at ¶9 (addressing chilling effect on discussions about internal issues).  Courts have found that similar declaration language adequately explained foreseeable harm. *See, e.g.*, *Machado Amadis*, 971 F.3d at 371 (affidavit addressing impact of release on discussions regarding adjudication of administrative appeals); *Lawyers' Comm.*, 2023 WL 3433978, at *9-11 (declaration addressing impact of release on office and inter-agency functions); *Reliant*, 520 F. Supp. 2d at 204 (declaration addressing impact of release on drafting intra-agency communications and investigations).  The SEC's declaration further notes the risk of public confusion should the withheld discussion concerning the draft Commission statement, as well as the draft itself, be released.  ECF 24-2 at ¶10.  Courts have recognized that public confusion is relevant to the foreseeable harm analysis.  *See, e.g.*,

*Energy Pol'y Advocates v. U.S. Dep't of State*, No. 1:19-cv-03307 (TNM), 2023 WL 4198200, at \*4 (D.D.C. June 27, 2023) ("Releasing [ ] inchoate material [like thoughts and analysis on proposed policies] could certainly mislead and foreseeably harm the agency's processes."); *Lawyers' Comm.*, 2023 WL 3433978, at \*10-11 (public confusion would occur upon release of "clean" drafts and draft "documents contain[ing] arguments for and against certain text as well as changes, comments, and edits").

Third, the declaration recognizes the potential harm in releasing the withheld names. *See* ECF 24-2 at ¶14; *see also* Hardy Decl. at ¶7.[8]  As discussed *supra*, Plaintiff has no authority for his position that such disclosure is "require[d]" or "necessary" given the possibility of harassment and the lack of a relevant public interest.  Opp. at 39.[9]

Finally, Plaintiff relies on cases distinguishable from the circumstances here.  *See Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 370-72 (D.C. Cir. 2021) (foreseeability of harm standard not met in connection with, among others, records containing "purely factual material" and where declarations did not specify harm relating to different kinds of records) (Opp. at 38, 40); *Project on Gov't Oversight, Inc. v. DHS*, 657 F. Supp. 3d 50, 63-65 (D.D.C. 2023) (declarations did not specify why disclosure of records would chill deliberations or create public confusion) (Opp. at 40-41).

---

[8] Plaintiff incorrectly states that the SEC's declarations contain "zero references to how the agency balanced any privacy interests against any public interest."  Opp. at 39.  The Tallarico Declaration addresses this point as well as segregability.  ECF 24-5 at ¶33.

[9] Plaintiff also quibbles that, by not providing partial web addresses and phone numbers, the SEC has failed to provide all segregable information.  *See* Opp. at 34; ECF 25-2 at ¶5. Plaintiff provides neither evidence for his position that such information actually sheds light on government activities nor supporting legal authority.

### E.  No material facts are in dispute.

"Plaintiff's Response to Defendant's Statement of Undisputed Facts," ECF 25-1 at 1-24 ("Response"), does not raise any genuine dispute of material fact sufficient to defeat summary judgment.  In general, Plaintiff does not point to any legal authority for his positions beyond bald citations to the Federal Rules of Civil Procedure.  To the extent Plaintiff also uses his Response to reiterate arguments in his briefing, the SEC has already addressed those arguments.

Plaintiff argues that declarants' statements are "outside the personal knowledge of the Declarant or [are] based on hearsay not within a hearsay exemption."  Response ¶9; *see also* Response ¶¶10, 11, 15, 18, 31, 34, 36, 38, 39, 41, 42, 46.  The SEC's supporting declarations include details about the declarants' roles, why they are knowledgeable about the FOIA Office's releases of records in response to Plaintiff's FOIA requests, and why they are familiar with contents of the released records and with SEC staff's communications with Plaintiff about his FOIA request.  *See* ECF 24-2 at ¶¶1-3; ECF 24-3 at ¶¶1-3; ECF 24-4 at ¶¶1, 3; ECF 24-5 at ¶¶1, 3, 4; Hardy Decl. at ¶¶1, 3; Reilly Decl. at ¶¶1, 3.  "[I]t is well settled that 'FOIA declarants may include statements in their declarations based on information they have obtained in the course of their official duties.'"  *Hainey v. U.S. Dep't of Interior*, 925 F. Supp. 2d 34, 41 (D.D.C. 2013); *Ecological Rights Found. v. U.S. EPA*, 541 F. Supp. 3d 34, 46-50 (D.D.C. 2021) ("agency declarants' testimony based on information obtained in the course of their official duties or from review of agency records is routinely considered when evaluating an agency's invocation of FOIA exemptions").

Further, Plaintiff makes cursory arguments about the applicability of FOIA Exemptions 4 and 7(E) and the attorney-client privilege (Response ¶¶24-30, 40-41, 45-46) but fails to address these withholdings anywhere in his Opposition.  Plaintiff also complains that the May 24, 2023 letter was not "sent to counsel Matthew Hardin." Response ¶11; ECF 25-2 at ¶2.  As Plaintiff admits, the SEC's FOIA Office sent that letter to the FOIA requester, Michael McColloch, who stated he is Plaintiff's counsel. *See* ECF 24-1 at ¶1; Response ¶¶1, 11.  The docket in this case shows Mr. McColloch is also Mr. Hardin's co-counsel.  In any event, as Plaintiff states, this is not "a material fact in the current posture of the case."  Response ¶11.

## **CONCLUSION**

For the foregoing reasons, and the reasons described in its opening papers, the SEC respectfully requests that the Court grant the SEC's motion for summary judgment.

Dated:  January 19, 2024                      Respectfully submitted,


/s/ *Alexandra Verdi*
Alexandra Verdi
NY Reg. No. 5480934
S.D. Tex. No. 3821611
Office of the General Counsel
U.S. Securities and Exchange Commission
100 F Street, NE
Washington, D.C. 20549
Telephone: (202) 551-5057
Fax: (202) 772-9263
verdim@sec.gov

*Counsel for Defendant*
*U.S. Securities and Exchange Commission*